# CHAVEZ & GERTLER LLP
## ATTORNEYS AT LAW

42 MILLER AVENUE
MILL VALLEY, CA 94941
TELEPHONE: (415) 381-5599
FACSIMILE: (415) 381-5572
joe@chavezgertler.com

March 10, 2008

The Honorable Susan Illston
United States District Judge
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102

    **Re:**     **Wyckoff v. United States, et al**
                **Case No: C 07 3600 SI**

Dear Judge Illston:

      Plaintiffs Wyckoff respectfully oppose the March 3, 2008 letter application of defendant Daniel Sperl for a Rule 26(c) protective order. Plaintiffs' requests for medical and employment records pertaining to Sperl seek relevant information under Rule 26, and meet the standards of Valley Bank v. Superior Court, (1975) 15 Cal.3d 652, relating to Sperl's right of privacy. [1]

A.     Issues In Dispute

      There are three issues of dispute between the parties:

- Plaintiffs contend that no protective order is required. Plaintiffs have agreed to limit the time frame of the documents requested to the two year period preceding the accident, and to execute a confidentiality agreement limiting disclosure of the documents to plaintiffs' counsel and retained experts. (Plaintiffs are awaiting a draft of the confidentiality agreement from Sperl counsel.)

---

[1] Some of the employment and medical records in dispute were gathered and/or obtained by defendant United States and provided to Sperl's counsel, who then reviewed the documents and determined to withhold some from plaintiffs. Plaintiffs have served interrogatories and document requests on Sperl, requesting identification and production of medical and employment records generated during the two years preceding the accident (Exhibits 1 and 2). Sperl has failed to respond to these interrogatories, notwithstanding that responses were due March 3, 2008 and a written meet and confer followed.

Hon. Susan Illston
March 10, 2008
Page 2

- If the Court determines that a protective order should be issued, the order should permit disclosure of documents generated during the two year period preceding the accident, and not the limited six month period requested by Sperl.

- If the Court determines that a protective order should be issued, the order should permit disclosure of <u>all</u> medical and employment records of Sperl during the subject period, <u>except</u> any categories of documents and/or specific documents that Sperl can demonstrate <u>in the present application</u> are not relevant to the issues of negligent supervision and course and scope in this action. (Sperl contends that the Court should permit his counsel to select later the documents to be produced, and to identify withheld documents in a privilege log and subject to <u>in camera</u> review by the Court on request by plaintiffs.)

B.   Background

   1.   Background Facts

This is a personal injury action against defendants Daniel Sperl and the United States arising from a motor vehicle accident December 22, 2005. A motor vehicle operated by Sperl, a member of the United States Coast Guard on active duty, crossed the yellow line on an undivided state highway and collided with the Wyckoff vehicle. The CHP report describes Mr. Sperl as traveling "at a high rate of speed" in "heavy rainfall with a wet roadway surface," and losing control as he "rapidly passed all witnesses." 49 year old Peter Wyckoff and 15 year old Holly Ann Eap, the husband and daughter of plaintiff Susan Wyckoff and the father and sister of minor plaintiff Alexander Wyckoff, were killed in the collision.

   2.   The Pleadings

The amended complaint asserts that Sperl is liable for negligence in causing the deaths of Peter Wyckoff and Holly Ann Eap, and that defendant United States is liable in that (1) Sperl was acting in the course and scope of employment at the time of the accident, and (2) the Coast Guard negligently supervised him. Sperl denies in his answer all allegations of negligence and liability. The United States denies in its answer that it is liable, and denies specifically that Sperl was acting in course and scope (Answer, ¶ 5); the United States avers that Sperl had told third parties that he was going on a personal trip to his home in Nevada (<u>Id</u>.). The United States also contests that it negligently supervised Sperl, although it has not yet filed an answer to the amended complaint so stating.

Hon. Susan Illston
March 10, 2008
Page 3

      3.      <u>Discovery To Date</u>

Sperl's deposition testimony supports a finding of course and scope. Sperl testified in substance that at the time of the accident he was traveling from the Coast Guard Petaluma base to Travis Air Force Base to obtain narcotic medication, pursuant to the order of his Coast Guard physician, a superior officer (see Sperl March 3, 2008 application). [2] Sperl also testified that he cannot remember the facts of the accident.

The limited discovery permitted by Sperl's counsel to date discloses evidence of mental and/or physical conditions potentially relevant to Sperl's dangerous acts that caused the accident. First, medical records show that Sperl was diagnosed with depression by a Coast Guard doctor October 21, 2005, two months before the accident (Exhibit <u>6</u>). Second, Sperl testified in deposition in substance that he has had a problem focusing his entire life, and was having difficulty sleeping during the period preceding the accident (see Exhibit <u>10</u>).

Third, substantial medications issued to Sperl suggest mental and/or physical conditions relevant to his dangerous acts, even if over-medication was not a cause of the accident. The Armed Forces pharmaceutical database shows that during the 100 days preceding the accident, Sperl was prescribed the following narcotic medications: Neurontin (according to drugs.com, used to treat seizures and pain; 180 capsules); Clonazepam (according to drugs.com, used to treat seizures or panic disorders; 60 tablets); Roxicet (according to drug.com, a narcotic pain reliever; 120 tablets); Klonopin (according to drugs.com, used to treat seizures, panic disorders, or other; 60 tablets); Tramadol (according to drugs.com, used to treat moderate to severe pain; 180 tablets); Mobic (according to drugs.com, used to treat pain or inflammation caused by arthritis; 90 tablets); and Roxicet again (120 tablets). See Exhibit <u>5</u>.

Also, the CHP found Zyprexa in Sperl's vehicle. According to drugs.com, Zyprexa is used to treat acute manic or mixed episodes of bipolar disorder, as maintenance treatment for bipolar disorder, and schizophrenia. See Exhibit <u>7</u>. The Coast Guard's post-accident investigation determined that Zyprexa, "an antipsychotic

---

[2] By stipulation of the parties, plaintiffs examined Mr. Sperl at the first session of his deposition without production of the contested medical and employment records; examination by defendant USA followed. During that session, Mr. Sperl gave testimony that resulted in plaintiffs moving to amend the complaint to add negligent supervision allegations against defendant United States. By stipulation with Sperl's counsel, the United States subsequently examined Mr. Sperl at a second session, and plaintiffs' further examination will follow at a third session after any required production of medical and employment records. Thus, plaintiffs have not yet been able to conduct an informed examination of Mr. Sperl as to his mental and physical conditions bearing on the accident.

medication," was not on the military pharmaceutical database of medications prescribed to Sperl. See Exhibit 8, ¶ 7. As Sperl had possession of a narcotic medication not prescribed by a military doctor, it suggests that he complained of further medical condition(s) – including bipolar disorder or schizophrenia – and obtained treatment and/or narcotic prescriptions, from civilian sources not disclosed in discovery.

Further, there is evidence that Sperl's mental or physical conditions were serious enough to have affected his job performance, and that the Coast Guard nevertheless permitted Sperl to manage his medical matters without close supervision. Sperl's supervisor stated in a Coast Guard interview that Sperl had been relieved of his previous position as a result of poor performance; that, as his medical conditions impacted his employment due to his repeated scheduled appointments and he had a history of poor work performance, he was directed to manage his medical conditions and notify the supervisor of his status periodically; and, "as a senior enlisted individual, he was trusted to manage his appointments without oversight." (Emphasis added; see Exhibit 9.)

C.  Previous Meet And Confers

Plaintiffs' January 22, 2008 letter meet and confer, and Sperl's counsel's February 15, 2008 email meet and confer, which were not disclosed to the Court in Sperl's application for protective order, are attached as Exhibits 3 and 4. Plaintiffs' January 22, 2008 letter sets out the discovery requested and the supporting grounds. Sperl's counsel's February 15, 2008 confirms an agreement that Sperl would permit production of "all medical and employment records" (emphasis added) subject only to a dispute about the time frame of the records. Sperl's counsel now seeks to withdraw the agreement, and permit Sperl's counsel to determine unilaterally which documents to produce. Plaintiffs' request that the parties' agreement be enforced.

D.  The Requested Discovery Is Proper

A party has the right to discover any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. FRCP 26(b)(1).

Plaintiffs assert that defendant United States is liable on two grounds for the dangerous, negligent acts of defendant Sperl that caused the deaths of Peter Wyckoff and Holly Ann Eap: respondeat superior and negligent supervision. A principal is

Hon. Susan Illston
March 10, 2008
Page 5

liable for the acts of its agent under the doctrine of respondeat superior. Civ.C. § 2230, et seq. Further, even where an employee's wrongful conduct falls outside the scope of employment and the employer thus is not liable on respondeat superior, the employer may be directly liable for negligent supervision of the employee. See John R. v. Oakland Unified School Dist., (1989) 48 Cal.3d 438, 453. Defendant United States contests that it is liable on either course and scope or negligent supervision grounds. Thus, the matters sought by plaintiffs' discovery are relevant, as follows:

    1.     Course And Scope

Defendant United States contends that Sperl was not authorized to go to Travis on the date of the accident, as there was no order. The medical and employment records sought by plaintiffs will show whether Sperl's superiors followed a practice of permitting him to travel off-base for medical-related matters, without issuing explicit orders. While discovery to date has not disclosed a written order authorizing the trip to Travis, written orders have not been found for previous instances of Sperl medical-related travel off-base either. Moreover, the interview of Sperl's superior suggests that Sperl – as a "senior enlisted individual" – was given considerable discretion to tend to his medical affairs "without oversight." (See Exhibit 9.) Thus, discovery of all records over the two year period preceding the accident that show Sperl travel off-base (whether medical-related, for leave, or other business), the Coast Guard's knowledge of those events, and whether the Coast Guard issued orders explicitly authorizing Sperl respecting those events, is proper.

    2.     Negligent Supervision

The requested discovery is relevant to the following matters:

(1) whether Sperl had any mental or physical medical conditions as a result of which he should not have been driving from Petaluma to Travis on the date of the accident;
(2) whether Sperl had been prescribed any medications – including for example antipsychotic medication – that he should have been taking in order to drive safely from Petaluma to Travis on the date of the accident;
(3) whether the Coast Guard had knowledge of these medical conditions or medications, and if it had such knowledge, when it had knowledge and whether it was able to and did prohibit or regulate Sperl's driving on medical-related or other Coast Guard business on the date of the accident;
(4) if the Coast Guard claims not to have had such knowledge, then whether the Coast Guard should have known – as a result of previous acts or behavior of Sperl, including his interactions with superiors and other Coast Guard members – of

Hon. Susan Illston
March 10, 2008
Page 6

these medical conditions or medications; when the Coast Guard should have known; and whether the Coast Guard was able to and did prohibit or regulate Sperl's driving on medical-related or other Coast Guard business on the date of the accident; and

  (5) What acts, if any, did the Coast Guard undertake to determine Sperl's fitness for duty during the two years preceding the accident, including without limitation the ability to drive on medical-related or other Coast Guard business?

  Plaintiffs contend that Sperl's unusual acts resulting in the deaths of two persons, the diagnosis of depression, his problems focusing, his difficulty sleeping, the heavy medications suggesting substantial mental and/or physical medical conditions, the presence in his vehicle of a antipsychotic drug that had not been prescribed through his chain of command, and the admission of Sperl's supervisor that Sperl performed poorly in his job as a result of his medical conditions and yet was not monitored closely, if at all, in medical matters, support the requested discovery.

  Moreover, the request for records during the two years preceding the accident – rather than the six month period requested by Sperl – is proper. First, military personnel rotate regularly; thus, the number of Coast Guard witnesses who can testify to substantive, sustained knowledge of Sperl's acts and behavior – and thus whether and how long the Coast Guard was on notice – will be limited if discovery is not permitted for the full period. Second, documents over the two year period will provide a reasonable opportunity to identify civilian providers of medical services and medications upon which Sperl relied, and the extent to which the Coast Guard should have been on notice. Third, discovery over the full period will permit a more accurate view of Sperl's true medical conditions and treatment, and thus the extent to which the Coast Guard should have been on notice. As with any patient, Sperl's medical symptoms likely displayed more or less prominently over a reduced period, depending on whether he was on leave, the nature and location of his duty assignments, and the extent to which he paid attention to medical treatment and responsible use of medications. Thus, plaintiffs request that the Court permit disclosure of records for the two years preceding the accident.

E. <u>Defendant Sperl Should Be Required To Disclose Now All Categories Of Documents That He Seeks To Withhold</u>.

  Sperl's proposal to screen documents to be produced to plaintiffs, and to identify any withheld documents in a privilege log, is not appropriate here. First, it will result in further delay in resolving the documents to which plaintiff is entitled. Second, the identification of documents in a privilege log is not sufficient for plaintiff to determine whether the documents are responsive. It is not the title of the

Hon. Susan Illston
March 10, 2008
Page 7

documents that determines whether they are relevant to the issues described above; it is the content. For example, a document title indicating a memo that records an assignment to Sperl may not seem responsive, but its content setting out previous problems with Sperl's performance on similar tasks, is. Likewise, a document title indicating a memo by Sperl on a generic matter may not seem responsive, but language or thoughts expressed in the memo that clearly reflect Sperl is suffering from a medical condition, are. Sperl should be required to identify now all categories of documents that he seeks to withhold, so that the Court may rule on the entirety of the matter, and discovery can proceed without further delay.

F.    The Requested Discovery is not Barred by Defendant Sperl's Right of Privacy

Plaintiffs do not dispute that Sperl's general statements of law from Palay v. Superior Court, (1993) 18 Cal.App.4th 919, and Pettus v. Cole, (1996) 49 Cal.App.4th 402, are correct. However, plaintiffs respectfully contend that the subject discovery requests comply with California law.

The privilege afforded privacy protection is qualified, not absolute. John B. v. Superior Court, (2006) 38 Cal.4th 1177, 1199 (discovery of defendant's relevant sexual history permitted, with limitations). The party seeking the discovery must show that the information is directly relevant to a cause of action or defense, and that disclosure is essential to the fair resolution of the lawsuit. Britt v. Superior Court, (1978) 20 Cal.3d 844, 859 (requested discovery not permitted where sought matters not put into issue by lawsuit). In balancing the right of civil litigants to discover relevant facts with the right of reasonable privacy, the Court's considerations should include the purpose of the information sought; the effect that disclosure will have on the parties and the trial; the nature of the objections urged by the party resisting disclosure; and the ability of the court to make an alternative order which may grant partial disclosure, disclosure in another form, or disclosure only in the event that the party seeking the information undertakes certain specified burdens which appear just under the circumstances. Valley National Bank of Nevada v. Superior Court, (1975) 15 Cal.3d 652, 658. Where it is possible to do so, a court should impose partial limitations rather than outright denial of discovery. Id.

Here, plaintiffs have shown that the information sought is directly relevant to the negligent supervision and course and scope claims of plaintiff arising from defendant's dangerous acts that resulted in the deaths of two persons. Further, disclosure is essential to a fair resolution of the lawsuit, in that the information sought is not available from other sources known to plaintiffs, and is required to establish liability of defendant United States for the substantial damages suffered by plaintiffs as a result of defendants Sperl's actions. The reasonable expectations of defendant

Hon. Susan Illston
March 10, 2008
Page 8

Sperl to privacy will not be prejudiced, as, again, the information sought is directly relevant to the claims arising from Sperl's conduct, and plaintiffs have agreed to sign a confidentiality agreement restricting access to the information to plaintiffs' counsel and retained experts.  Finally, defendant Sperl will have the opportunity to seek exclusion of any categories of documents he can demonstrate not relevant, during the pendency of this motion.

H.      Conclusion

On the foregoing grounds, plaintiffs request that defendant Sperl's request for a protective order be denied.  In the alternative, if the Court determines to issue a protective order, plaintiffs request that the Court permit disclosure of all medical and employment records pertaining to defendant Sperl that were generated during the two year period preceding the accident, except any categories of documents and/or specific documents that Sperl can demonstrate in the present application are not relevant to the issues of negligent supervision and course and scope in this action.

Very truly yours,

Joseph R. Igelmund