# EXHIBIT 8

U.S. Department of
Homeland Security

United States
Coast Guard

Commanding Officer
United States Coast Guard
Training Center

599 Tomales Road
Petaluma, CA 94952
Staff Symbol: tms
Phone: (707) 765-7994
Fax: (707) 765-7495

5800
30 May 2007

# MEMORANDUM

From: H. W. Seamans, LCDR, USCG
CG TRACEN Petaluma

Reply to Attn of: Darin W. Schneider, HSC
Investigation Officer
(707) 765-7275

To: CG MLCPAC (lc)

Subj: LETTER INCIDENT REPORT; SCOPE OF EMPLOYMENT INVESTIGATION OF CHIEF DANIEL E. SPERL (RETIRED)

Ref: (a) Administration Investigations Manual, COMTINST M5830.1 (series)
(b) Coast Guard Claims and Litigation Manual, COMDTINST M5890.9 (series)

1. In accordance with references (a) and (b), this investigation is being conducted and this report is being prepared in contemplation of litigation and to assist attorneys, acting on behalf of the Chief Counsel, representing interests of the United States in this matter.

2. This investigation involves the Scope of Employment for FSC Daniel E. Sperl (retired), Coast Guard active duty stationed at Training Center Petaluma on 22 December, 2005. At approximately 1305, on 22 December 2005, SNM was driving his private vehicle northbound on SR 121 as shown in Enclosures (1) and (2). SNM was traveling at a high rate of speed relative to the wet driving conditions and crossed over the double yellow center line impacting a vehicle traveling southbound on SR 121. As a result of the collision, two occupants of the vehicle Chief Sperl struck were killed and two were seriously injured.

3. During the investigation following the accident as detailed in Enclosure (2), California Highway Patrol Officer J. Moser performed a Drug Recognition Evaluation identifying several medications found on the floorboard of the SNM's vehicle. Officer J. Moser identified the medications as the following: Enzyte, Clonazepam, Zyprexa, Zocor, Atenolol, Altace, Omeprazole, and Zoloft as per Enclosure (3). Due to the fact the SNM's speech was slurred, the CHP performed a toxicology screening which detected Desmethylsertraline, Sertraline, and Alprazolam. The quantitative results were not provided. Therefore, it was difficult to determine impairment. However, drowsiness is an expected side effect with use of these medications especially when combined as indicated in Enclosure (4). Additionally, SNM has a history of insomnia as per Enclosure (5), which also may have contributed to drowsiness.

4. FSC Sperl was diagnosed with cervical spondylosis with myelopathy as per Enclosure (6), which healthcare providers attempted to control with pain medications. To assist with treating his condition, Dr. Harman, CDR, MD/FS, USPHS, referred SNM for a MRI as per Enclosure (7). The Tricare satellite office located at Kahler Clinic scheduled the MRI at Redwood Regional Medical Group in Santa Rosa, CA for 22 December, 2007 at 0900 as per Enclosures (7) and (8). For this procedure, FSC Sperl requested Alprazolam due to a history of claustrophobia, documented in Enclosure (9), which he experienced during MRI procedures. This was a diagnostic appointment. Therefore, there were no medications prescribed at this appointment.

FOR OFFICIAL USE ONLY: Information contained in this investigation may be subject to the Privacy Act of 1974 (5 U.S.C. 552a). Personal information contained in this investigation may be used only by authorized persons in the conduct of official business. Any unauthorized disclosure or misuse of personal information may result in criminal and/or civil penalties. If you are not the intended recipient of this correspondence please destroy all copies of this correspondence after notifying the sender of your receipt of it.

Subj: LETTER INCIDENT REPORT; SCOPE OF EMPLOYMENT            5800
INVESTIGATION OF (CHIEF) DANIEL E. SPERL (RETIRED)           30 May 07

5. LT Rob Stiles, USCG Claims and Litigation Branch, Pacific JAG Office, corresponded with FSC Sperl's attorney attempting to schedule an interview to determine his scope of employment at the time of the accident, which occurred after his scheduled MRI appointment. Specifically, an interview with SNM was sought in order to determine where he was going at the time of the incident, as well as the purpose of his trip. However, attempts to contact FSC Sperl through his attorney, Mr. Stephen Turer, failed because, as per Enclosure (10), FSC Sperl did not respond to his counsel's to requests to schedule the interview time prior to the completion of this report. Based on the Pharmacy Data Transaction Service (PDTS), which is a centralized data repository that provides a common patient medication profile for all Department of Defense (DoD) beneficiaries regardless of the point of service they use, SNM may have been traveling to Travis Air Force Base for a refill of his medications as per Enclosure (11). Enclosure (11) lists in detail pertinent information, including the following: the prescribing physician; date of prescription and dosage; and which items treat his multiple medical diagnoses as defined in his review of systems/past medical history as per Enclosure (5). These providers included a practitioner at Travis Air Force Base as indicated by the medications prescribed in Enclosure (12).

6. The location of Chief Sperl's accident is logically connected to a trip to Travis Air Force Base as per Enclosure (1). However, as per Enclosure (13), there were no scheduled appointments at Travis Air Force Base on 22 December 2005. As per Enclosure (14), Chief Sperl stated in a previous interview on May 5, 2006, "I was going for medicine at Travis." Enclosure (15) confirms Chief Sperl may have been unaware of the refill policy. Generally, the prescribing clinic manages the refills. However, the refills may be transferred to a local clinic if a pharmacist requests the transfer.

7. Zyprexa, an antipsychotic medication identified at the scene of the accident as per Enclosure (3), was not identified in the PDTS. Therefore, FSC Sperl may have been seeing an outside provider for mental health treatment.

8. Based on an interview with FSCM Karen Naulty, FSC Sperl's supervisor, Chief Sperl was a trusted senior enlisted individual who was directed to manage his medical conditions and notify her of his status periodically as per Enclosure (13). Based on an interview by LT Jacobson as summarized in Enclosure (2), FSCM Naulty was aware of FSC Sperl's MRI medical appointment on 22 December, 2007. Additionally, a second interview of FSC Sperl by LT Jacobson revealed SNM was at work before his 0900 medical appointment in Santa Rosa, CA. as noted in Enclosure (2), but it is unlikely he was directed to return to work after his appointment as per Enclosure (13).

#

Enclosures: (1) Map of SR 121 identifying the Sonoma/Napa County Line
    (2) Line of Duty Determination, dtd 07 Jun 06
    (3) Evidence/Property Receipt
    (4) Captain Burroughs' statement, dtd 23 May 07
    (5) Sleep Medicine Institute Consult, dtd 03 Oct 05
    (6) Chronological Record of Medical Care, dtd 21 Dec 05
    (7) Referral for MRI cervical spine, dtd 21 Dec 05
    (8) Advanced Imaging Institute, results of the MRI from 22 Dec 05
    (9) Chronological Record of Medical Care, dtd 23 Jun 05
    (10) Email correspondence from LT Stiles to HSC Schneider, dtd 25 May 07
    (11) PDTS for Daniel Sperl, dtd 22 Dec 05
    (12) Memorandum from Travis Air Force Base, dtd 24 May 07
    (13) FSCM Naulty's statement, dtd 17 May 07
    (14) Transcript of Interview with Daniel Sperl, dtd _____