

**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

| | |
|---|---|
| *150 Almaden Blvd., Suite 900* | *(408) 535-5044* |
| *San Jose, California 95113* | *FAX:(408) 535-5081* |

May 9, 2008

Hon. Susan Illston
US District Court
Norther District of California
450 Golden Gate Ave
San Francisco, CA 94104

> Re:   Eap/Wyckoff v. USA/Sperl
> Case Nos. C 07-2301 SI and C 07-3600 SI
> Defendant USA's Motion re Order of Examination Issue

## INTRODUCTION

Defendant USA submits this letter brief pursuant to the procedure created by the Stipulation for Revised Case Management Schedule and Order ("Stipulation," attached as Exhibit A) filed May 6, 2008.[1] Although this issue is being raised by the government pro-actively, the question before the Court is really whether the Wyckoff plaintiffs ("plaintiffs") are entitled to a protective order, prohibiting the defendant USA from taking the depositions of ten government-employed witnesses ("subject deponents"), none of whom are parties to this case, who possess factual information upon which defendant USA seeks to rely in support of its anticipated dispositive motion. Although these depositions were properly noticed, plaintiffs now object *unless they are permitted to ask their questions first.* As shown below, this objection is without merit.

---

[1]Defendant USA filed a motion dated April 25, 2008, for an order permitting its depositions to occur, starting June 4, 2008. The parties continued their meet and confer efforts to resolve the scheduling dispute, even after defendant's pending motion was filed. Stipulation at 2:7-9. The parties were able to resolve all issues related to the pending scheduling dispute except one: "Whether defendant USA may initiate questioning of the witnesses whose depositions it noticed on April 11, 2008." Stipulation at 2:10-12. The parties agreed to meet and confer on that issue, and to tender that issue to the Court for adjudication in the event the meet and confer did not result in agreement. Stipulation at 3:12-19. Despite significant meet and confer efforts, the parties have failed to resolve this one remaining issue. Accordingly, defendant USA now tenders that issue to the Court.

**BACKGROUND**

This case arises out of a fatal automobile accident, which occurred on December 22, 2005. The key issues are whether co-defendant Sperl was within the course and scope of his federal employment when the accident occurred, and whether defendant USA negligently supervised him by permitting him to drive. Defendant USA disputes liability and intends to file a dispositive motion.

On April 11, 2008, defendant USA noticed the deposition of sixteen witnesses whose testimony defendant USA wanted to obtain to support its liability contentions.[2] Exhibit B. In an e-mail accompanying this Notice of Depositions, defendant USA explained the reasons why it noticed these depositions rather than wait for plaintiffs, including the fact that plaintiffs did not provide defense counsel with their list of intended depositions by the agreed upon due-date. Exhibit C. All of the dates were pre-approved by all counsel in accordance with the Local Rules. Pursuant to the Stipulation, these depositions will now take place between July 15, 2008, and September 30, 2008. Stipulation at 2:24-27. The parties have met and conferred and have reserved potential dates for these depositions. Stipulation at 3:13. The parties have also agreed to meet and confer shortly before June 5, 2008, to identify which deponents shall be deposed in which order, and on which of the agreed dates, subject to the witness' availability. Stipulation at 3:3-5.[3]

To date, the Wyckoff plaintiffs have not served deposition notices for the subject deponents. In contrast, Plaintiff Eap has noticed the deposition of Ed Chacon and Officer Franklin, and indicated the intention to depose Sperl's second-level supervisor, Naulty. Accordingly, plaintiffs may take the lead in conducting those depositions.

**THE SUBJECT DEPONENTS' EXPECTED TESTIMONY**

On May 6, 2008, *at plaintiffs' request*, defendant USA made the following verbal proffer as to the subject deponents' expected testimony, which was subsequently reduced to writing as reflected in Exhibit D:

---

[2]The list included eleven witnesses employed by the federal government, and five non-government witnesses. Plaintiffs do not object to the depositions of the non-government witnesses. Defendants have agreed to allow plaintiffs to depose one of the government employed witnesses, Ed Chacon, because plaintiffs noticed his deposition first.

[3]Defendant USA is willing to defer to plaintiffs as to the order of the depositions within the agreed upon time-frame, subject to the witness' availability, provided that defendant USA is permitted to initiate the questioning of the witnesses it noticed for deposition, and has so advised the parties.

## Major Mickey Mickey Bellemin, USAF[4]

(PMK re Travis Pharmacy)

1/ There was no medicine for Sperl for pickup.

2/ There was no medicine that had refills left and could have been refilled through pharmacy.

3/ Sperl did not follow proper procedure to get his doctor in Petaluma to order narcotic pain medicine at the pharmacy. The procedure is that Harman would have sent a written prescription order directly to the pharmacy.

## Mr. Peter Mosher, USAF

(PMK re Travis Clinic)

1/ Sperl has never walked in to Travis without an appointment to see a doctor.

2/ Not proper for someone from Petaluma, like Sperl, to go in to Travis Sick Call for the purpose of trying to see a doctor for the purpose of obtaining a prescription for narcotic pain medication that could get refilled at the Travis pharmacy. If he wants Sick Call, he has to go to Petaluma.

## Cdr Kenneth Harman, USCG

(Sperl's Primary Care physician at Petaluma)

1/ He did not speak to Sperl about going to Travis. He did not ever order Sperl to go to Travis.

2/ The conversation that Harman had with Sperl about medicine occurred months before the December visit.

3/ At the med appointment the day before the accident, there was no discussion of going to Travis. The conversation about what medicine was appropriate or inappropriate occurred months before the appointment the day before the accident.

4/ As to the Xanax, Harman was aware Sperl was getting MRI in Santa Rosa, and aware that Sperl claustrophobic, and that MRI closed and hard for claustrophobic people, and Sperl had asked him a number of times for Xanax, and prescribed Xanax to Sperl, and verbally told Sperl to get a driver to take him to Santa Rosa.

4/ Will review the med records and justify why it was not appropriate or necessary for him to impose a driving prohibition on Sperl.

## Lt Rob Stiles, USCG Attorney

(Participated in government interview of Sperl's attorney, Raff, and authored memo memorializing same)

1/ Need to meet and confer with Sperl's attorney regarding deposing this witness and exploring alternative ways to get the information before the Court.

2/ The subject of Stiles is what was in his memos (Exhibit F): the statements and admissions by Rapp. His purpose was to act as secretary as to what Raff said.

3/ The US will not allow anyone else to ask any questions of Stiles. US will invoke privilege as to any other subjects.

## Major Ella Kundu, USAF

(Sperl's treating neurologist at Travis)

1/ She saw nothing that would suggest that Sperl was unsafe to drive.

Would provide her with same 2 years of medical records.

---

[4]Major Bellemin replaces Lt. Col Welch, who recently deployed to the Middle East. Exhibit E.

2/ She was not responsible for pain management for Sperl. She did neuro consult, but the person responsible in her mind for Sperl's pain management was the primary at Petaluma.

### PO Aldrena Sherman and PO Napoleon Delane, USCG
(two co-workers that Sperl testified he planned to see the night of the accident to give them alcohol gifts)
1/ They are friends with Sperl.
2/ They have never exchanged presents in the past.
3/ Sperl never said anything about having a present for them.
4/ As far as they knew, Sperl was a safe driver.

### Chief Mike McKinley, USCG
(Sperl's co-worker)
1/ He visited Sperl at the hospital, and Sperl said he was on the way to go see his family when the accident occurred.
2/ To extent any of Sperl's friends or co-workers, including McKinley, witnessed Sperl driving, defendant USA wants to ask them questions re whether they thought Sperl was a safe driver.

### Master Chief Bob Stage, USCG
(Sperl's immediate supervisor)
1/ If Sperl wanted to leave the base to go to a medical appointment off base, he had to tell Stage. Although Sperl had a certain amount of autonomy in handling medical appointments, the procedure for medical appointments off base was that Sperl had to give advance notice to Stage.
2/ Practice in past was that Sperl gave notice, often by email.
3/ Sperl did not give Stage notice on the date of the accident re this unscheduled medical appointment.
4/ He had no information that would cause him to believe that Sperl was unfit to drive.

### PO Holly Mendez, USCG
(works at the Petaluma pharmacy)
1/ Has actual recollection of seeing Sperl pick up the Xanax.
2/ She gave him a disclosure just like the exemplar Mr. Scharf attached as an exhibit to Sperl's deposition.
3/ She discussed with him that if you take this medicine you should get a driver to take you to the MRI.
4/ Post accident, Sperl went to her and tried to find out who prescribed the Zyprexa.
5/ She searched her records and assured that the Coast Guard had never prescribed it.

## MEET AND CONFER EFFORTS

_____ The parties engaged in extensive e-mail communication in an effort to resolve this issue. That e-mail, in chronological order, is collectively attached as Exhibit G. In addition, counsel participated in three telephonic meet and confer sessions on May 5 and 6, 2008. In short, defendant USA has proposed that it be permitted to conduct a brief direct examination, limited to

the subjects set forth in its proffer, as to each of the subject deponents.[5]  Plaintiffs, however, have never submitted any type of counter-proposal to amicably resolve this dispute, even after receiving the government's proffer, which plaintiffs specifically requested.  Plaintiffs have refused to discuss any type of compromise proposal because they believe defendant USA has not provided adequate legal authority to support its right to take depositions of federal employees. As shown below, Federal Rule of Civil Procedure 30 allows the United States to depose federal employees and the burden rests with plaintiffs to show good cause which it shoult not be allowed to do so.

## ARGUMENT

Federal Rule of Civil Procedure  30 provides, in relevant part, that a party may "depose *any person*, including a party, without leave of court . . . ." (emphasis added).  The Rule does not limit the persons subject to deposition: "The taking of depositions is not limited to parties to the action but extends to any person, including a party. Thus, for example, a party may examine an officer or employee of a party, a dismissed party, any potential witness or a third-party defendant. A party may even take his or her own deposition." 8A Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d Section 2102 at pp. 24-25. Thus it has been held that a corporation may depose its own employee. *Frank S. Sinkwich, Inc. v. Texaco Refining & Marketing, Inc.*, 120 F.R.D. 540 (M.D. Ga 1988). It is within the discretion of the Court to determine which party may initiate the examination. *Occidental Chem. Corp. v. OHM Remediation Servs.*, 168 F.R.D. 13 (W.D.N.Y. 1996)

An opposing party wishing to prevent a deposition may seek a protective order. Fed. R. Civ. Pr. 26(c).  The party seeking a protective order must demonstrate "good cause." *Id.* The burden is on the party seeking to bar an otherwise validly noticed deposition to show that the discovery should not be held, or if held at all, should be so conditioned as to avoid or minimize prejudice or expense to the party seeking the protective order. *19th Street Baptist Church v. St. Peters Episcopal Church*, 190 F.R.D. 345 (E.D. PA 2000).

There is no dispute as to whether these depositions should be taken; when they should occur; or where they should take place.[6]  The only issue is whether plaintiffs have a legal right ask their questions first.

_____

[5]Although the government agreed to be brief in its direct examination, and to limit the direct examination to the disclosed subjects, the government cannot agree to any strict time limit or any restriction as to the content of the specific questions, and so advised plaintiffs.

[6]Plaintiffs have not yet objected to the place of the deposition. To avoid further litigation on this issue, defendant USA asks the Court to permit it to conduct the depositions in the San Francisco Office of the United States Attorney. This location would allow counsel to more easily seek the assistance of the Court should a dispute arise during a critical deposition; hopefully, such assistance will not be required.

Rule 30 does not prohibit a government or corporate party from deposing its own employees, nor does it confer on the opposing party a legal right to depose those witnesses first.[7] Plaintiffs had every opportunity to but did not notice the depositions themselves.[8] Thus, plaintiffs'cannot show good cause for the relief they seek.

With the possible exception of Dr. Harman and Bob Stage, the subject deponents are not plaintiffs' adversaries. Plaintiffs do not contend that the other eight deponents negligently supervised Sperl or otherwise caused or contributed to the subject accident. They are simply witnesses employed by the federal government with personal knowledge relevant to this dispute, and can be deposed by any party seeking to do so.

Moreover, there are other good reasons why the government should be permitted to initiate the examinations:

**1. Efficiency:** It is more efficient for defense counsel to conduct a brief direct examination of the subject deponents, to elicit the testimony on which defendant seeks to rely in support of its dispositive motion, which will then allow plaintiffs' counsel to conduct a more responsive cross-examination

**2. Readability:** It will be easier for the Court to understand this testimony if it unfolds as a direct and cross examination, particularly if the parties agree to stipulate to the admissibility of the deposition transcripts of the minor witnesses whose credibility is not at issue.

**3. Fairness:** The government noticed these depositions first. Plaintiffs did not provide defense counsel with their list of intended depositions by the agreed upon due-date, despite defense counsel's repeated requests, which was one of the reasons why defendant USA decided to set forth the proposed schedule in the form of a deposition notice. Exhibit C. Plaintiffs still have not served a deposition notice for any of the subject deponents.

---

[7] Plaintiffs cite *Tierney v. Omnicom Group, Inc* (SD NY 2007) 2007 U.S.Dist.Lexis 6998, pp. 3, 7-8 and *19th Street Baptist Church v. St. Peters Episcopal Church* (ED PA 2000) 190 F./R.D. 345, 350. In these cases, plaintiffs' attorney wanted to depose the named plaintiffs to preserve their testimony. In contrast, none of the subject deponents are defendants in this action. As this is not a case of "self-deposition," plaintiffs' cited cases are inapposite.

[8] Pursuant to Court Order, on January 11, 2008, defendant disclosed the names of the government declarants upon whose testimony the government intended to rely in support of its dispositive motion. Many of the subject deponents were included on that list, including Stage, Harman, McKinley, Mendez, Stiles and Welch. Plaintiffs could have served depositions notices for these individuals after receiving that disclosure, but they did not. Plaintiffs argue that they wanted to wait to notice depositions until they obtained Sperl's prior medical and employment records. While plaintiffs may have an argument to justify delaying the date of the deposition, nothing prevented them from noticing the depositions for a date in the future by which time they reasonably expected to receive the records. Had they done so, like Eap did with respect to Chacon, defendant would have allowed them to initiate the questioning.

Moreover, as Sperl was employed by the Coast Guard, and was mostly treated by Coast Guard and Air Force doctors, it is to be expected that most of the percipient witnesses with personal knowledge bearing on the scope of employment and negligent supervision issues will be federal employees. Under plaintiffs' analysis, they would have the right of first examination as to most of the witnesses, even those whose conduct is not claimed to have caused the fatal collision. Plaintiffs should not be permitted to control the next phase of this case in the manner they seek, absent clear and convincing legal authority supporting their position, which they have yet to provide.

**4. No Undue Prejudice:** Defendant USA has provided plaintiffs with notice as to the specific subjects defense counsel intends to inquire about during its brief examination, and has already provided plaintiffs with all of the exhibits that defendant intends to use during these depositions. Moreover, defendant deferred to plaintiff as to when the depositions would occur (plaintiffs insisted delaying the depositions until July 15) and defendant is even willing to defer to plaintiffs as to the order that these witnesses may be deposed. That plaintiffs perceive that it is somehow strategically advantageous for them to initiate questioning does not mean they have a legal right to do so.

**5. Preservation of testimony:** Plaintiffs assert that the only situation where a corporate or governmental party can depose its own employees is to preserve testimony. While this may be the *usual* case, the law does not proscribe that it is the *only* case. Even if this were the law, almost all of the subject deponents are in active military service and thus subject to deployment with little notice. For example, Lt. Col. Welch, one of the original sixteen witnesses noticed for deposition by defendant on April 11, has already been deployed to the Middle East. The risk of losing a witness to the War in Iraq is real, not speculative, and has already happened once.

## CONCLUSION

For these reasons, defendant USA respectfully requests the Court to issue an Order, permitting it to (1) take the depositions of the federal employees it noticed at the San Francisco Office of the United States Attorney and (2) initiate the questioning at those depositions.[9]

DATED: May 9, 2008                    Respectfully submitted,
                                      JOSEPH P. RUSSONIELLO,
                                      United States Attorney

                                      /S/

                                      JAMES A. SCHARF
                                      Assistant United States Attorney

---

[9]The government apologizes to the Court for exceeding the five-page limit, which was necessary given the need to set forth the deponents' expected testimony.

# Exhibit A



CHAVEZ & GERTLER LLP
1   JONATHAN E. GERTLER (Bar No. 111531)
    JOSEPH R. IGELMUND (Bar No. 52493)
2   42 Miller Avenue
    Mill Valley, California 94941
3   Telephone: (415) 381-5599
    Facsimile: (415) 381-5572
4
    Attorneys for Plaintiffs
5   SUSAN WYCKOFF and
    ALEXANDER WYCKOFF
6

7
                    UNITED STATES DISTRICT COURT
8
                  NORTHERN DISTRICT OF CALIFORNIA
9

10
    SUSAN WYCKOFF, individually, and as        ) Case No. C07-03600 SI
11  Administratrix of the Estate of PETER       ) Case No. C07-2301 SI
    WYCKOFF; ALEXANDER WYCKOFF by               )
12  and through his Guardian ad Litem, SUSAN    ) STIPULATION FOR REVISED CASE
    WYCKOFF,                                    ) MANAGEMENT SCHEDULE;
13                                              ) [PROPOSED] ORDER
              Plaintiffs,                       )
14                                              )
          vs.                                   )
15                                              )
    UNITED STATES OF AMERICA; DANIEL            )
16  SPERL and DOES 1 through 20,                )
                                                )
17            Defendants.                       )
                                                )
18                                              )
    CHARLIE EAP, heir at law of decedent Holly  )
19  Annie Eap,                                  )
                                                )
20            Plaintiff,                        )
                                                )
21        vs.                                   )
                                                )
22  UNITED STATES OF AMERICA; DANIEL            )
    SPERL and DOES 1 to 10,                     )
23                                              )
              Defendants.                       )
24                                              )
                                                )
25                                              )

26

27

28

STIPULATION FOR REVISED CASE MANAGEMENT SCHEDULE; [PROPOSED] ORDER

1

**STIPULATION**

2    This stipulation is made by plaintiffs SUSAN WYCKOFF, individually, and as

3    Administratrix of the Estate of PETER WYCKOFF, and ALEXANDER WYCKOFF by and

4    through his Guardian ad Litem SUSAN WYCKOFF ("Wyckoff Plaintiffs"), by their

5    attorneys, Joseph R. Igelmund, Chavez & Gertler LLP, plaintiff CHARLIE EAP, heir at law

6    of decedent Holly Annie Eap ("Eap Plaintiff"), by his attorneys, Andrew J. Davis, Davis Law

7    Offices, defendant UNITED STATES OF AMERICA ("USA"), by its attorneys, James A.

8    Scharf, Assistant United States Attorney, and defendant DANIEL EARL SPERL ("Sperl"),

9    by his attorneys, Kristina L. Velarde, Cesari Werner & Moriarty.

10    WHEREAS, defendant USA noticed on April 11, 2008 depositions of government

11    witnesses and others ("defense witnesses") that it sought to take between April 23, 2008, and

12    June 25, 2008.

13    WHEREAS, the Court ruled in its order filed March 26, 2008 that "defendant Sperl's

14    employment and medical records are relevant to whether Sperl was acting in the course of his

15    employment at the time of the accident, whether the United States of America negligently

16    supervised Sperl, and whether the accident was as a result of any of Sperl's medical

17    conditions and/or medications."

18    WHEREAS, defendants contend that plaintiffs received all of the discoverable

19    government records on April 14, 2008, and that arrangements are being made to provide

20    plaintiffs with the discoverable non-government records on an expedited basis through

21    Releases signed by Sperl.

22    WHEREAS, plaintiffs further contend that Wyckoff Plaintiffs' attorney Joseph

23    Igelmund has responsibility for discovery on behalf of the Wyckoffs in this action; that he has

24    been advised that he requires kidney surgery; that the kidney surgery has been scheduled for

25    June 5, 2008; and that said surgery usually requires five days of hospitalization and three to

26    four weeks of home recuperation thereafter.

27    WHEREAS, the Wyckoff Plaintiffs have requested that the depositions noticed by

28    defendant USA be taken at a later date than noticed, and do not oppose a continuance of the

STIPULATION FOR ORDER RE DEPOSITION DISCOVERY AND CASE MANAGEMENT CONFERENCE;
[PROPOSED] ORDER

1  hearing on defendant's USA dispositive motion from September 26, 2008, to November 21,
2  2008.

3      WHEREAS, defendant USA has filed a motion for an order permitting its depositions
4  to occur, starting June 4, 2008, or, in the alternative, for an order moving the June 6, 2008
5  Further CMC to May 9, 2008 ("the pending motion").

6      WHEREAS, the Wyckoff plaintiffs oppose said motion, in part on the above grounds.

7      WHEREAS, the parties continued their meet and confer efforts to resolve the
8  scheduling dispute, even after defendant's pending motion was filed, including but not limited
9  to a telephone conference on April 30, 2008.

10     WHEREAS, the parties were able to resolve all issues related to the pending
11  scheduling dispute except one:  Whether defendant USA may initiate questioning of the
12  witnesses whose depositions it noticed on April 11, 2008.

13     WHEREAS, plaintiffs state that in entering into this scheduling stipulation, plaintiffs
14  rely on defendant Sperl, defendant USA and the third party record holders to timely cooperate
15  in the gathering and production of the Sperl records; plaintiffs also contend that the review of
16  the Sperl Records is necessary to conduct informed deposition examinations of defendants'
17  witnesses, and plaintiffs have not received all of said records.

18     WHEREAS, the parties present this Stipulation and Proposed Order as a complete
19  resolution of the pending scheduling dispute.

20     WHEREAS, defendant USA agrees to withdraw its pending motion should the Court
21  sign this Proposed Order.

22     NOW THEREFORE, the parties stipulate and respectfully request an order of the
23  Court pursuant to said stipulation:

24     1.  The parties' respective depositions pertinent to defendant USA's anticipated
25  dispositive motion, including without limitation the depositions noticed by defendant USA
26  subject to any further order of the Court upon the adjudication described in Paragraph 3
27  below), shall be rescheduled to occur between July 15, 2008, and September 30, 2008.

28

2

2. The parties shall meet and confer on April 30, 2008, for the purpose of reserving potential dates for the parties' respective depositions pertinent to defendant USA's anticipated dispositive motion. The parties shall further meet and confer shortly before June 5, 2008 to identify which deponents shall be deposed in which order, and on which of the agreed dates, subject to the witness' availability. Plaintiffs have requested the opportunity to conduct a few discovery depositions between July 15 and 31, 2008, to facilitate obtaining additional information and documents prior to participating in the other depositions, and the parties shall meet and confer  shortly before June 5, 2008, to address that issue as well. Unless the Court otherwise orders, all depositions needed to prepare for or oppose defendant's anticipated dispositive motion shall be completed by September 30, 2008, on mutually agreed dates.

3. Plaintiffs have the right to take the deposition of Ed Chacon, which was first noticed by plaintiff Eap and subsequently noticed by defendant USA. The parties have not been able to come to an agreement as to whether defendant USA shall be permitted to take depositions of its witnesses that it noticed, without a limitation on the scope of the USA's opening examination and without agreement on the order of examination. However, the parties agree to continue to meet and confer on that issue, and that if the meet and confer does not result in agreement, to tender that issue to the Court for adjudication; that defendant USA shall file a letter brief  as to that issue by May 9, 2008; and that plaintiffs shall file an opposition letter brief as to that issue by May 16, 2008.

4. The Further Case Management Conference presently calendared for June 6, 2008 shall remain on calendar.

5. The hearing on defendant USA's anticipated dispositive motion, presently set for September 26, 2008, shall be continued to the earliest date convenient to the Court on or after November 21, 2008. The respective dates on which the moving papers, opposition, and reply are due shall be determined according to Northern District Rules 7-2 and 7-3.

6. The parties shall participate in a mediation with Judge Infante on a mutually convenient date to occur between the date defendant USA files its reply brief in support of its anticipated dispositive motion, and the date of the hearing on said motion.

1       7.     Nothing in this Stipulation and Proposed Order prevents any party from seeking

2  additional modifications to the case management schedule set forth herein either through

3  motion or through a request at the June 6, 2008 Further CMC. This includes the right of

4  plaintiffs to request a further rescheduling of depositions if the parties have failed to obtain

5  the Sperl Records by the June 6, 2008 Further CMC. However, plaintiffs would need to show

6  how the Sperl Records not produced are necessary to prepare for the deposition(s) they seek

7  to reschedule.

8       8.     Immediately on execution of this Stipulation, defendant USA shall advise the

9  Court by letter filing of this Stipulation, and shall request the Court to stay the seven-day

10  deadline for plaintiffs to file letter opposition to defendant USA's letter motion filed April 25,

11  2008, while the Court is considering whether to approve this Stipulation. In the event the

12  Court issues the requested order pursuant to this stipulation, defendant USA shall immediately

13  take its April 25, 2008 letter motion off calendar.

14      SO STIPULATED

16  Dated: May  1 , 2008          CHAVEZ & GERTLER LLP

17                        /s/ Joseph R. Igelmund

18                By: _____
                           Joseph R. Igelmund

20                Attorneys for Plaintiffs SUSAN WYCKOFF,
                individually, and as Administratrix of the Estate of

21                PETER WYCKOFF; ALEXANDER WYCKOFF by and
                through his Guardian ad Litem, SUSAN WYCKOFF

23  Dated: May 1, 2008           DAVIS LAW OFFICES

24                        /s/ Andrew J. Davis

25                By: _____
                           Andrew J. Davis

27                Attorneys for Plaintiffs CHARLIE EAP, heir at law of
                decedent Holly Annie Eap

28                          4

1    Dated: May1 , 2008        UNITED STATES ATTORNEY

2                         */s/James A. Scharf*
                  By: _____

3                         James A. Scharf
                        Assistant United States Attorney
4

5                    Attorneys for Defendant USA

6

7    Dated: May 1, 2008        CESARI, WERNER & MORIARTY

8                         */s/ Kristina L. Velarde*
                  By: _____

9                         Kristina L. Velarde

10                    Attorneys for Defendant DANIEL EARL SPERL

11

12

13                           **PROPOSED ORDER**

14        A Stipulation for Revised Case Management Schedule having been filed, and the

15   Court having considered the papers filed by the parties, and good cause appearing:

16        IT IS SO ORDERED, and

17        IT IS FURTHER ORDERED that the hearing on defendant USA's motion to dismiss

18   presently set for September 26, 2008 shall be continued to __Dec. 19_____ , 2008, at

19   __9 a.m.__ a.m./p.m., and that defendant USA shall file and serve its moving papers on said

20   motion no later than __Nov. 14_____ , 2008, and that plaintiffs shall file and serve

21   any opposition to said motion no later than _____Nov. 28_____ , 2008, and that

22   defendant USA shall file and serve any reply on said motion no later than

23   _____ , 2008.

24

25    Dated: May ____ , 2008        _____
                        THE HONORABLE SUSAN ILLSTON

26                    UNITED STATES DISTRICT COURT JUDGE

27

28                              5

# Exhibit B

1   JOSEPH P. RUSSONIELLO (SCBN 44332)
    United States Attorney
2   JOANN M. SWANSON (SBN 88143)
    Chief, Civil Division
3   JAMES A. SCHARF (CSBN 152171)
    Assistant United States Attorney
4
    150 Almaden Blvd., Suite 900
5   San Jose, California 95113
    Telephone: (408) 535-5044
6   FAX: (408) 535-5081
    James.Scharf@usdoj.gov
7
    Attorneys for Defendant
8   United States of America

9                          UNITED STATES DISTRICT COURT
10
                        NORTHERN DISTRICT OF CALIFORNIA
11
                             SAN FRANCISCO DIVISION
12

13  CHARLIE EAP,                          )   Case No.    C 07-2301 SI
                                          )               C 07-3600 SI
14       Plaintiff,                       )
                                          )
15  SUSAN WYCKOFF, ET AL.                 )   NOTICE OF DEPOSITIONS
                                          )
16       Plaintiff,                       )
                                          )
17       v.                               )
                                          )
18  UNITED STATES OF AMERICA,             )
    DANIEL EARL SPERL,                    )
19
         Defendants.
20   _____

21

22       PLEASE TAKE NOTICE that, pursuant to Rule 30(b), Federal Rules of Civil Procedure,

23  defendant United States of America will take the deposition upon oral examinations of the

24  following witnesses:

25       **CHIEF WARRANT OFFICER ED CHACON**:

26       DATE:      Wednesday, April 23, 2008 at 10:00am

27       PLACE:     United States Attorney's Office
                    450 Golden Gate Ave., 9th Floor
28                  San Francisco, CA 94104

    Notice of Depositions
    C 07- 2301 SI
    C 07-3600 SI                          -1-

1    :    **Lt Col. PATRICIA WELCH**

2        DATE:      Thursday, May 1, 2008 at 10:00am

3        PLACE:     United States Attorney's Office
                    450 Golden Gate Ave., 9th Floor
4                   San Francisco, CA 94104

5        **TONY ANDERSEN**

6        DATE:      Thursday, May 1, 2008 at 2:00pm

7        PLACE:     United States Attorney's Office
                    450 Golden Gate Ave., 9th Floor
8                   San Francisco, CA 94104

9        **JANET AND WENZEL SPERL**

10       DATE:      Wednesday, May 7, 2008 at 11:00am

11       PLACE:     Law Offices of Andrew Davis
                    1900 W. Garvey Ave. S, Suite 160
12                  West Covina, CA 91790

13       **CDR KENNETH HARMAN    (NOT CONFIRMED)**

14       DATE:      Thursday, May 15, 2008 at 10:00am

15       PLACE:     United States Attorney's Office
                    450 Golden Gate Ave., 9th Floor
16                  San Francisco, CA 94104

17       **LT ROB STILES**

18       DATE:      Wednesday, May 28, 2008 at 10:00am

19       PLACE:     United States Attorney's Office
                    450 Golden Gate Ave., 9th Floor
20                  San Francisco, CA 94104

21       **MAJOR ELLA KUNDU  (NOT CONFIRMED)**

22       DATE:      Wednesday, May 28, 2008 at 2:00pm

23       PLACE:     United States Attorney's Office
                    450 Golden Gate Ave., 9th Floor
24                  San Francisco, CA 94104

25       **PO ALDRENA SHERMAN**

26       DATE:      Wednesday, May 28, 2008 at 4:00pm

27       PLACE:     United States Attorney's Office
                    450 Golden Gate Ave., 9th Floor
28                  San Francisco, CA 94104

Notice of Depositions
C 07- 2301 SI
C 07-3600 SI                    -2-

1    **MR. PETER MOSHER   (NOT CONFIRMED)**

2    DATE:        Wednesday, June 4, 2008 at 10:00am

3    PLACE:       United States Attorney's Office
                  450 Golden Gate Ave., 9th Floor
4                 San Francisco, CA 94104

5    **CHIEF MIKE MCKINLEY**

6    DATE:        Wednesday, June 4, 2008 at 2:00pm

7    PLACE:       United States Attorney's Office
                  450 Golden Gate Ave., 9th Floor
8                 San Francisco, CA 94104

9    **MASTER CHIEF BOB STAGE**

10   DATE:        Wednesday, June 11, 2008 at 10:00am

11   PLACE:       United States Attorney's Office
                  450 Golden Gate Ave., 9th Floor
12                San Francisco, CA 94104

13   **PO NAPOLEON DELANE**

14   DATE:        Wednesday, June 18, 2008 at 10:00am

15   PLACE:       United States Attorney's Office
                  450 Golden Gate Ave., 9th Floor
16                San Francisco, CA 94104

17   **MR. NATE RAFF**

18   DATE:        Wednesday, June 18, 2008 at 2:00pm

19   PLACE:       United States Attorney's Office
                  450 Golden Gate Ave., 9th Floor
20                San Francisco, CA 94104

21   **DR. JEFFREY ORSTADT**

22   DATE:        Wednesday, June 25, 2008 at 10:00am

23   PLACE:       United States Attorney's Office
                  450 Golden Gate Ave., 9th Floor
24                San Francisco, CA 94104

25   **PO HOLLY MENDEZ**

26   DATE:        Wednesday, June 25, 2008 at 2:00pm

27   PLACE:       United States Attorney's Office
                  450 Golden Gate Ave., 9th Floor
28                San Francisco, CA 94104

Notice of Depositions
C 07- 2301 SI
C 07-3600 SI                    -3-

1      These depositions will be held before a certified shorthand reporter and will be recorded

2  stenographically.

3

4

5  DATED: 4-11-08                             JOSEPH P. RUSSONIELLO

6                                     United States Attorney

7                                  /S/

                                  JAMES A. SCHARF

8                                  Assistant United States Attorney

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Depositions
C 07- 2301 SI
C 07-3600 SI              -4-

1

## CERTIFICATE OF SERVICE

2          The undersigned hereby certifies that she is an employee of the Office of the United

3     States Attorney for the Northern District of California and is a person of such age and discretion

4     to be competent to serve papers.  The undersigned further certifies that she is causing a copy of

5     the following:

6                              ## NOTICE OF DEPOSITIONS

7
      ### CHARLIE EAP v. UNITED STATES OF AMERICA and DANIEL EARL PEARL
8                                      C-07-2301 SI

9          ### SUSAN WYCKOFF, et al. v. UNITED STATES OF AMERICA and DANIEL EARL
                                         PEARL
10                                      C-07-3600 SI

11
      to be served this date upon the party(ies) as follows:

12
        __XX__  **FIRST CLASS MAIL** by placing such envelope(s) with postage thereon fully prepaid in
13    the designated area for outgoing U.S. mail in accordance with this office's practice.

14
      to the parties addressed as follows:
15
      Andrew Jackson Davis, Esq                    Jonathan E. Gertler, Esq
16    Davis Law Offices                            Joseph R. Ingelmund, Esq
17    1900 W Garvey Ave S #160                     42 Miller Avenue
      West Covina, CA 91790                        Mill Valley, CA 94941
18
      Paul N. Cesari, Esq
19    Kristina Velarde, Esq
20    Cesari, Werner & Moriarty
      360 Post Street
21    San Francisco, CA 94108-4908

22          In addition, the foregoing Notice of Depositions was also sent via e-mail by James A.

23    Scharf to all parties on April 11, 2008.

24

25

26

27

28

      Notice of Depositions
      C 07- 2301 SI
      C 07-3600 SI                              -5-

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.

3

4

5        Executed this 11 day of April, 2008, at San Jose, California.

6                                            /S/
                                    _____
7                                    Mimi Lam, Legal Assistant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Depositions
C 07- 2301 SI
C 07-3600 SI                        -6-

# Exhibit C

## Scharf, James (USACAN)

**From:**       Scharf, James (USACAN)
**Sent:**       Friday, April 11, 2008 11:47 AM
**To:**         'Joe Igelmund', Jonathan Gertler; davislawoffice@verizon.net; 'Kristina L. Velarde'
**Cc:**         Chad.E.Kauffman@uscg.mil; Tseng, Neill (USACAN)
**Subject:**    Eap/Wyckoff v. USA/Sperl:  Deposition Schedule



EAP depo notice
4-11-08.wpd


Dear counsel:

As promised, we served by federal express today for delivery on Monday the additional medical and employment records, which were the subject of the recent motion for a protective order.

Also, as promised, attached please find the government's proposed deposition schedule.

Please note that all of the dates have been confirmed by the witnesses, unless otherwise indicated. We are still trying to persuade Dr. Harmon to come to SF for his deposition, although it might be necessary for us to depose him in Boston. I want to thank Chad for spending more than 10 hours contacting these witnesses to ascertain their availability, and then creating a schedule which is consistent with (1) the dates we have all previously reserved and with (2) the dates requested by the witnesses.

After giving the matter some thought, I decided to set forth the proposed schedule in the form of a deposition notice, for several reasons:

1. No one provided me with their list of intended depositions by the agreed upon due date, despite my repeated requests.

2. The government requires this testimony for its dispositive motion, which is due August 22. As it will be necessary to obtain transcripts and review them prior to that date, it is our goal to complete all of the needed depositions by the end of July. Serving our own Notice of Depositions is the best way I know to ensure that the depositions we need will be completed in a timely fashion.

3. Opposing counsel is probably unaware of the specific facts many of these witnesses will testify to. Thus, it will be more efficient for me or Neil to conduct a brief direct examination of these witnesses, to elicit this testimony, which will then allow opposing counsel to conduct a more efficient cross-examination.

4. It will be easier for the Court to understand this testimony if it unfolds as a direct and cross examination, particularly if the parties agree to stipulate to the admissibility of the deposition transcripts at trial in lieu of live testimony, which I am sure the Court will encourage us to do, particularly as to the minor witnesses whose credibility is not at issue.

Notwithstanding the fact that we have noticed these depositions and have confirmed most of the dates with these witnesses, we are still willing to discuss with you and resolve to the satisfaction of all concerned any concerns you have about the dates of the depositions or the order of the questioning. I therefore propose that we schedule a telephone conference to further discuss these issues and to confirm our proposed deposition schedule. We will also need to reserve additional dates for the witnesses you all wish to depose, and I propose that we also do that at the telephone conference. In order to give you time to review the new medical and employment records, I propose that we

1

schedule a telephone conference for any time on Monday, April 21, which gives you a full week to review the new reco₂ds and consider our proposed schedule.

It also occurred to me as I am typing this e-mail that by noticing these depositions ourselves, we are saving all parties money, as the government will then pay for the cost of the deposition. Of course, if you wish to question the witness first, you will need to pay for the cost of the deposition. Certainly, you have the right to question Mr. Chacon first if you wish to do so, as your deposition notice of Mr. Chacon takes priority over ours as it was served first. However, you may wish to have me question Mr. Chacon first to illicit the relevant policy and procedure testimony, about which you may not be familiar.

As I have stated many times, I do not want to force anyone to do anything they are uncomfortable doing, but given the schedule ordered by the Court pursuant to stipulation, I hope you understand that I must do the things I feel are necessary to keep this case on schedule.

Regards,

James A. Scharf
Assistant United States Attorney
(408) 535-5044

# Exhibit D

## Scharf, James (USACAN)

| | |
|---|---|
| **From:** | Scharf, James (USACAN) |
| **Sent:** | Tuesday, May 06, 2008 1:33 PM |
| **To:** | 'Joe Igelmund' |
| **Cc:** | Kauffman, Chad (CIV); Tseng, Neill (USACAN) |
| **Subject:** | RE: Wyckoff/Eap v USA - List of USA Depo Issues |

Joe:

Thank you for acting as scribe. Your e-mail accurately sets forth the "proffer" I made to you during our second meet and confer telephone conversation today, with one typographical error: Harmon point number 2 should read "months before the December visit," which is consistent with point number 3. And as to Stiles, I hope to meet and confer, so that a motion is not necessary.

However, I do need to repeat the "disclaimer" I provided you at the beginning of our telephone call: This is a proffer only, designed to give you notice of the subjects I presently intend to inquire about during my direct examination, based on my current knowledge of the case. I have not personally interviewed any of these witnesses; nor have I obtained declarations from them. Please do not consider this proffer to be a prior statement of the witness, which you can use to impeach the witness should they testify differently that I expect. (You agreed that you would not use this list as an impeachment device.) Also, I reserve the right to ask additional questions after you complete your examination. And as I have stated, while I agree to be brief, and to limit my direct examination to the subjects set forth below, I cannot agree to a strict time limit or any restriction as to the content of my specific questions.

Given this proffer, which I intend to include in my letter brief, please advise as to which specific government-employed witnesses you remain unwilling to allow me to examine first.

Jim

**From:** Joe Igelmund [mailto:jri@chavezgertler.com]
**Sent:** Tuesday, May 06, 2008 12:39 PM
**To:** Scharf, James (USACAN)
**Cc:** Jonathan Gertler
**Subject:** Wyckoff/Eap v USA - List of USA Depo Issues

Jim – Per our telephone meet and confer a few minutes ago, these are my notes of the issues you identified for the USA's deposition examinations. I understand that you will review the notes for accuracy, so that they can act as the list of issues that defendant USA represents it would seek to cover if its depositions proceed. Pls email me with any corrections. In the meantime, I am reviewing the notes to determine if there are any issues as to which plaintiffs would agree to waive their right to notice and examine the witnesses. I will call you in one hour. Thanks.

Travis PMK's:
Pharmacy PMK:
1/ There was no medicine for Sperl for pickup.
2/ There was no medicine that had refills left and could have been refilled through pharmacy.
3/ Sperl did not follow proper procedure to get his doctor in Petaluma to order narcotic pain medicine at the pharmacy. The procedure is that Harman would have sent a written prescription order directly to the pharmacy.

Travis Clinic PMK (Mosher):
He does at Travis what Chacon does at Petaluma.

1

1/ Sperl has never walked in to Travis without an appointment to see a doctor.

2/ Not proper for someone from Petaluma, like Sperl, to go in to Travis Sick Call for the purpose of trying to see a doctor for the purpose of obtaining a prescription for narcotic pain medication that could get refilled at the Travis pharmacy.  If he wants Sick Call, he has to go to Petaluma.

Cdr Harman:

1/ He did not speak to Sperl about going to Travis.  He did not ever order Sperl to go to Travis.

2/ The conversation that Harman had with Sperl about medicine occurred months before the October visit.

3/ At the med appointment the day before the accident, there was no discussion of going to Travis. The conversation about what medicine was appropriate or inappropriate occurred months before the appointment the day before the accident.

4/ As to the Xanax, Harman was aware Sperl was getting MRI in Santa Rosa, and aware that Sperl claustrophobic, and that MRI closed and hard for claustrophobic people, and Sperl had asked him a number of times for Xanax, and prescribed Xanax to Sperl, and verbally told Sperl to get a driver to take him to Santa Rosa.

4/ Will review the med records and justify why it was not appropriate or necessary for him to impose a driving prohibition on Sperl.

Lt Stiles

1/ Scharf says he needs to go to court anyway.

2/ The subject of Stiles is what was in his memo: the statements and admissions by Rapp.  His purpose was to act as secretary as to what Rapp said.

3/ The US will not allow anyone else to ask any questions of Stiles.  US will invoke privilege as to any other subjects.

Major Kundu

Is treating neurologist at Travis med center.

1/ She saw nothing that would suggest that Sperl was unsafe to drive.

Would provide her with same 2 years of medical records.

2/ She was not responsible for pain management for Sperl.  She did neuro consult, but the person responsible in her mind for Sperl's pain management was the primary at Petaluma.

Coast Guards persons Sherman and DeLane

These are the two persons that Sperl wanted to see the night of the accident to give them alcohol gifts.

1/ They are friends with Sperl.

2/ They have never exchanged presents in the past.

3/ Sperl never said anything about having a present for them.

4/ As far as they knew, Sperl was a safe driver.

Coast Guard person McKinley

1/ He visited Sperl at the hospital, and Sperl said he was on the way to go see his family when the accident occurred.

2/ To extent any of these people including McKinley witnessed Sperl driving, USA wants to ask them questions re whether they thought Sperl was a safe driver.

Coast Guard person Stage

1/ If Sperl wanted to leave the base to go to a medical appointment off base, he had to tell Stage. Although Sperl had a certain amount of autonomy in handling medical appointments, the procedure for medical appointments off base was that Sperl had to give advance notice to Stage.

2/ Practice in past was that Sperl gave notice, often by email.

3/ Sperl did not give Stage notice on the date of the accident re this unscheduled medical appointment.

4/ He had no information that would cause him to believe that Sperl was unfit to drive.

Coast Guard person Mendez

She works at the pharmacy.

1/ Has actual recollection of seeing Sperl pick up the Xanax.

2/ She gave him a disclosure just like the exemplar at Scharf attached as an exhibit to the deposition.

3/ She discussed with him that if you take this medicine you should get a driver to take you to the MRI.

4/ Post accident, Sperl went to her and tried to find out who prescribed the Zyprexa.

5/ She searched her records and assured that the Coast Guard had never prescribed it.


Joseph R. Igelmund
Chavez & Gertler LLP
42 Miller Ave.
Mill Valley, Ca  94941
(415) 381-5599
joe@chavezgertler.com
www.chavezgertler.com

NOTICE:  This email message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections.  This message is solely for the use of its intended recipients.  Any unauthorized use or disclosure of this message is strictly and expressly prohibited.  If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately.

# Exhibit E

1   JOSEPH P. RUSSONIELLO (CSBN 44332)
    United States Attorney
2   JOANN M. SWANSON (SBN 88143)
    Chief, Civil Division
3   JAMES A. SCHARF (CSBN 152171)
    Assistant United States Attorney
4
        150 Almaden Blvd., Suite 900
5       San Jose, California 95113
        Telephone: (408) 535-5044
6       FAX: (408) 535-5081
        James.Scharf@usdoj.gov
7
    Attorneys for Defendant
8   United States of America

9                               UNITED STATES DISTRICT COURT
10
                              NORTHERN DISTRICT OF CALIFORNIA
11
                                   SAN FRANCISCO DIVISION
12

13  CHARLIE EAP,                        )       Case No.    C 07-2301 SI
                                        )                   C 07-3600 SI
14          Plaintiff,                  )
                                        )
15  SUSAN WYCKOFF,                      )       NOTICE OF DEPOSITION OF
                                        )       **MAJOR MICKEY BELLEMIN, USAF**
16          Plaintiff,                  )
                                        )
17      v.                              )
                                        )
18  UNITED STATES OF AMERICA,           )
    DANIEL EARL SPERL,
19
            Defendants.
20

21

22
            PLEASE TAKE NOTICE that, pursuant to Rule 30(b), Federal Rules of Civil Procedure,
23
    United States of America  will take the deposition upon oral examination of **MAJOR MICKEY**
24
    **BELLEMIN,** on Tuesday, **August 5th, 2008** at 10:00am at United States Attorney's Office,
25
    located at 450 Golden Gate Avenue, 9th Floor, San Francisco, CA 94104, (415) 436-7200.
26
            Major Bellemin replaces Lt. Col. Patricia Welch, who was previously noticed for deposition
27
    to occur on May 1st, 2008. Lt. Col. Welch is no longer available to be deposed because she has
28
    been deployed to the Middle East.  The deposition of Maj. Bellemin may be rescheduled for

    Notice of Deposition of Major Mickey Bellemin
    C 07- 2301 SI
    C 07-3600 SI                           -1-

1   another date and time pursuant to the parties' agreement to meet and confer, and will be subject

2   to any restrictions to which the parties may agree or the Court may subsequently impose.

3

4        The deposition will be held before a certified shorthand reporter and will be recorded

5   stenographically.

6   DATED: 5-5-08                          JOSEPH P. RUSSONIELLO
                                           United States Attorney
7

8                                          JAMES A. SCHARF
                                           Assistant United States Attorney
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Deposition of Major Mickey Bellemin
C 07- 2301 SI
C 07-3600 SI                           -2-

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Northern District of California and is a person of such age and discretion to be competent to serve papers. The undersigned further certifies that she is causing a copy of the following:

**NOTICE OF DEPOSITION OF MAJOR MICKEY BELLEMIN**

**CHARLIE EAP v. UNITED STATES OF AMERICA and DANIEL EARL PEARL**
**C-07-2301 SI**

**SUSAN WYCKOFF, et al. v. UNITED STATES OF AMERICA and DANIEL EARL PEARL**
**C-07-3600 SI**

to be served this date upon the party(ies) as follows:

  **XX   FIRST CLASS MAIL** by placing such envelope(s) with postage thereon fully prepaid in the designated area for outgoing U.S. mail in accordance with this office's practice.

to the parties addressed as follows:

Andrew Jackson Davis
Davis Law Offices
1900 W Garvey Ave S #160
West Covina, CA 91790

Jonathan E. Gertler, Esq
Joseph R. Ingelmund, Esq
42 Miller Avenue
Mill Valley, CA 94941

Paul N. Cesari, Esq
Cesari, Werner & Moriarty
360 Post Street
San Francisco, CA 94108-4908

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9 day of May 2008, at San Jose, California.

Mimi Lam, Legal Assistant

Notice of Deposition of Major Mickey Bellemin
C 07- 2301 SI
C 07-3600 SI                    -3-

# Exhibit F

**U.S. Department of
Homeland Security**

**United States
Coast Guard**

Commander
Maintenance & Logistics Command
Pacific JAG Office

Const Guard Island, Bldg 54A
Alameda, CA 94501-5100
Staff Symbol: (lc)
Phone: (510) 437-3644
Fax: (510) 437-3337

5890
05 Jun 2007

# MEMORANDUM

From: Robert Stiles, LT
MLCPAC (lc)

To: Eric Young
CG-0945

Subj: SPERL SCOPE OF EMPLOYMENT INTERVIEW ATTEMPT

Ref: (a) Claim No. 3306LC0110; Eap, Charlie
(b) Claim No. 3306LC0209; Wyckoff, Susan
(c) Claim No. 3306LC0208; Wyckoff, Alexander

1. This memorandum is being prepared in contemplation of litigation and to assist attorneys acting on behalf of the Chief Counsel, representing the interests of the United States in this matter.

2. On 22 Dec 2005, at approximately 1305, FSC Daniel E. Sperl (now retired) was driving his POV north on Rt. 121 in Sonoma County California when he crossed into a lane of oncoming traffic and struck another vehicle head-on. The collision resulted in the death of two passengers and serious injury of two other passengers who were riding in the vehicle FSC Sperl struck. As a result of the accident, three individuals filed the above referenced claims, totaling over $31 million in personal injury and wrongful death damages. Several questions remain unclear regarding the nature of FSC Sperl's trip during the time in question, and, as a result, this office initiated a scope of employment investigation to resolve the matter.

3. Due to the time constraints of the investigation, the regularly appointed investigator was unable to arrange an interview with Chief Sperl, who is represented by counsel. However, an interview was eventually arranged and Mr. Nate Raff was to act as counsel for FSC Sperl. On 04 Jun 2007 at 1630, LT Robert Stiles, LT Chad Kauffman, and Mr. Eric Young attempted a phone interview with FSC Sperl, regarding questions related to his scope of employment at the time of the incident. This office initiated the call and contacted Mr. Raff, however FSC Sperl could not be reached despite repeated attempts.

4. During the call, which lasted approximately 45 minutes, Mr. Raff made several representations regarding FSC Sperl and the circumstances in question. These representations include the following:

   a. Mr. Raff indicated that he spoke to FSC Sperl shortly before the conference call; that he indicated the time of the conference to FSC Sperl; and that he told FSC Sperl to answer all questions as candidly as possible.

   b. Mr. Raff notes that FSC Sperl is able to recall only general events from the week previous to 22 Dec 2005. Due to head injuries resulting from the accident, FSC Sperl lacks a present recollection of the events on the date of the accident.

Subj: SPERL SCOPE OF EMPLOYMENT INTERVIEW ATTEMPT        5890
                                                         4 Jun 2007

c. FSC Sperl previously indicated on 01 May 06 that he was on his way to Travis Air Force Base to pick up medication. FSC Sperl has also told his counsel that he was either on the way to Travis for an MRI or that he was picking up a prescription at Travis. However, under further examination by his own counsel, Sperl claimed no actual knowledge of any appointment or prescription. Rather, Sperl just assumed the reasons for his trip, stating, "Well, the only reason I get on Rt. 121 is to go to Travis and I assume I had to do something up there." In fact, the scope of employment investigation indicates that FSC Sperl's MRI appointment actually took place at 0900 that day, several hours before the accident, and he received no new prescription at that appointment.

d. Mr. Raff stated that he was unaware of the 0900 appointment. He also did not know whether FSC Sperl attended work on the date of the accident, or if he had any plan to return to work that day. Mr. Raff indicated he had significant doubts that FSC Sperl can recall those facts.

e. Mr. Raff stated that FSC Sperl indicated that he has no recollection of seeing another doctor outside of military treatment. Sperl stated to Mr. Raff that he had no financial means of treating with another physician. However, the investigation in this matter indicates that FSC Sperl was taking the anti-psychotic Zyprexa; that no such medication was ever prescribed to him by a military physician; nor was Zyprexa ever dispensed to FSC Sperl by a military pharmacy. Mr. Raff surmised, based on his own internet research, that FSC Sperl may have received the Zyprexa to treat tremors. However, there is nothing in the investigation to support such a conclusion. Indeed it is also possible that FSC Sperl sought psychiatric treatment from an outside provider because he was concerned that a psychiatric condition might jeopardize his Coast Guard career or military retirement, or that he simply did not want his employer to be aware of a psychiatric condition.

f. Mr. Raff agreed that he will contact this office on or before 08 Jun 2007 in the event that he is able to learn any information that might further clarify the nature of FSC Sperl's automobile trip at the time in question.

g. Mr. Raff was advised that his client must complete an interview if he desires to be scoped. That in the absence of additional evidence, it appeared to everyone including Mr. Raff that there were serious problems with any attempt to scope FSC Sperl. MLCPAC also agreed to forward appropriate DOJ representation documentation to Mr. Raff for his review and consideration.

#

Copy:   File

2

U.S. Department of
Homeland Security

United States
Coast Guard

Commander
Maintenance & Logistics Command
Pacific JAG Office

Coast Guard Island, Bldg 54A
Alameda, CA 94501-5100
Staff Symbol: (lc)
Phone: (510) 437-3644
Fax: (510) 437-3337

5890
07 Jun 2007

# MEMORANDUM

From:   Robert Stiles, LT
        MLCPAC (lc)

To:     Eric Young
        CG-0945

Subj:   SPERL SCOPE OF EMPLOYMENT INTERVIEW ATTEMPT -- ADDENDUM

Ref:    (a) Claim No. 3306LC0110; Eap, Charlie
        (b) Claim No. 3306LC0209; Wyckoff, Susan
        (c) Claim No. 3306LC0208; Wyckoff, Alexander

1.  This memorandum is being prepared in contemplation of litigation and to assist attorneys
acting on behalf of the Chief Counsel, representing the interests of the United States in this
matter.

2.  The following is offered as an addendum to the 05 Jun 2007 memo regarding the attempted
interview of FSC Daniel E. Sperl (retired).

3.  Today, Mr. Nate Raff, counsel for FSC Sperl, contacted this office at 1500 and spoke to LT
Rob Stiles for approximately 15 minutes regarding FSC Sperl. He indicated as follows:

   a.  Mr. Raff was able to establish phone contact with FSC Sperl shortly after the termination
   of the 05 Jun 2007 conference call.

   b.  During their phone conversation, FSC Sperl indicated that that he recalls being told by a
   CAPT Cook several days before  22 Dec 2005 that he was on too many prescriptions, and
   that CAPT Cook could not prescribe him additional medications due to potential adverse
   drug reactions. According to Sperl, CAPT Cook told him that he would need to "go up to
   Travis to straighten out his medications."

   c.  Sperl indicated that "on a couple of occasions" he had gone to Travis in the past to
   resolve prescriptions, and that his normal pattern was to drive up without an appointment
   and wait to speak to someone (most likely a pharmacist). No medical orders were ever
   produced from him to do so, and CAPT Cook orally told Sperl he would need to head up
   to Travis.

   d.  FSC Sperl told Mr. Raff that he is certain he never sought treatment from a non-
   government provider. Sperl cannot recall taking Zyprexa, and is generally unable to
   recall most of the medications he was taking at the time of the incident. Mr. Raff
   enquired whether I knew who the prescribing doctor was on the pill bottle, and I replied
   that that is the same question we have. I added that Zyprexa is not indicated for FSC
   Sperl in the DoD database.

   e.  Mr. Raff further stated  that he thought it was likely that the government would likely
   decline to scope FSC Sperl. Once that determination is made, Mr. Raff has advised FSC

Subj: SPERL SCOPE OF EMPLOYMENT INTERVIEW ATTEMPT -- ADDENDUM        5890
07 Jun 2007

Sperl that he will no longer represent him on issues related to this civil matter. He has advised FSC Sperl to seek the counsel of an attorney with greater experience with tort issues and scope of employment in the military context.

f.  I agreed with Mr. Raff and told him that, although the final determination is not mine, that these facts will not likely change the government's position that FSC Sperl was acting outside the scope of employment at the time of the accident.

g.  Mr. Raff stated that FSC Sperl was still willing to speak to the government regarding this matter, but also indicated that FSC Sperl's memory is very weak and he recalls very little from this period.

#

Copy:    File

# Exhibit G

**Scharf, James (USACAN)**

| | |
|---|---|
| **From:** | Scharf, James (USACAN) |
| **Sent:** | Friday, May 02, 2008 11:03 AM |
| **To:** | Joe Igelmund |
| **Cc:** | Tseng, Neill (USACAN); Kauffman, Chad (CIV); A. Davis; Jonathan Gertler; Kristina L. Velarde |
| **Subject:** | Eap/Wyckoff -- Order of Examination Issue |

Joe:

Thank you for your thoughtful e-mail yesterday. I was very pleased that we were able to present a joint stipulation  to the Court to resolve the pending scheduling dispute, and I am heartened that we may also be able to resolve the one outstanding issue regarding the order of questioning ourselves. I agree that we work best together on the telephone individually, and I encourage you to call me when you would like to discuss an issue with me.

Following up on our conversations regarding the order of examination issue, would you be willing to withdraw any objection to me or Neil beginning the questioning of the depositions we noticed, excluding Chacon, but including Welch's replacement, provided we agree to do the following: (1) Pay for the Court Reporter. (2) Agree to be brief, although no strict time limit would be imposed.  (3) Agree to send all parties an e-mail prior to the deposition listing the issues, topics and subjects we intended to question the witness about, although no formal limitation or restriction on the specific questions we intend to ask would be imposed.  (4) Agree to make a reasonable and good faith attempt to telephonically answer any follow-up questions any of the lawyers may have regarding the e-mail list of issues, topics and subjects, prior to the deposition, provided that we not be asked to divulge privileged information.

I do not think the law requires us to do any of this, but we would be willing to agree to undertake the above as a professional courtesy if it would obviate the need to file another letter motion with the Court.

Please let me know as soon as possible whether you believe we will be able to resolve this issue amicably. Otherwise, I need to start working on my letter brief, which is due next Friday.

Jim.

## Scharf, James (USACAN)

| | |
|---|---|
| **From:** | Scharf, James (USACAN) |
| **Sent:** | Monday, May 05, 2008 2:15 PM |
| **To:** | 'Joe Igelmund' |
| **Cc:** | Tseng, Neill (USACAN); Kauffman, Chad (CIV); Jonathan Gertler |
| **Subject:** | RE: Eap/Wyckoff -- Order of Examination Issue |

Joe:

Despite my repeated requests that we actually speak about these issues voice to voice, you continue to send me these formal and, frankly, quite aggressive meet and confer letters, to which I feel compelled to respond in kind.

Despite receiving your e-mail, I hope that we will be able to amicably resolve this issue. I have presented you with a reasonable proposal, based on input you previously provided me, which balances our competing needs, but you seem uninterested in considering such a compromise solution.

I have read the cases cited in your letter. In those cases, the plaintiffs' attorney wanted to depose the plaintiffs. It was a classic situation of a self-deposition. That is not the case here. As I explained in my last e-mail, the government witnesses are not defendants. And with the possible exception of Harmon and Stage, you are not even challenging these witnesses' conduct. They are simply people who happen to work for the government who possess information on which defendant USA wishes to rely in support of its dispositive motion and at trial should the motion be denied. The cases you cite are inapplicable.

However, 19th Street Baptist Church case does contain a statement of the applicable legal principles, which you may wish to consider:

"Once a party has commenced a lawsuit, but before an appeal is taken, perpetuation of testimony is governed not by Rule 27, but by the interplay of Rules 30 and 26. Rule 30 provides, in relevant part, that a party may take the deposition of any person, including a party, without leave of court, provided the parties have conferred as instructed by Rule 36(f) and have produced their initial disclosure material as required by Rules 26(a)(1) and 26(d). Rule 26 permits a party to take his own deposition without leave of court."

"An opposing party wishing to prevent a deposition designed to perpetuate testimony after a lawsuit has begun may seek a protective order. The party seeking the protective order must demonstrate "good cause." In other words, the burden is on the party seeking to bar an otherwise validly noticed deposition to show that the discovery should not be held, or if held at all, should be so conditioned as to avoid or minimize prejudice or expense to the party seeking the protective order."

Moreover, Wright -- Miller -- Marcus (cited in the 19th Street Baptist Church case) states: "The taking of depositions is not limited to parties to the action but extends to any person, including a party. Thus, for example, a party may examine an officer or employee of a party, a dismissed party, any potential witness or a third-party defendant. A party may even take his or her own deposition."

I trust this satisfies your request for legal authority to support our right to depose these government-employed witnesses. We submit that we have validly noticed these depositions. We cleared dates and we have sent you the documents related to their depositions as part of our disclosures and discovery responses. The burden is now on you to show "good cause" why those depositions should not go forward. Your concern that they will testify more favorably to the government if I be permitted to initiate questioning does not, in my opinion, constitute good cause to prohibit me from beginning the questioning during the depositions we noticed and paid for.

1

Finally, I do not think threatening me with a Rule 11 motion is a productive way to approaching our meet and confer telephone conference, which is scheduled to begin in about 50 minutes.

I look forward to receiving your call at 3:00 p.m.

James A. Scharf
(408) 535-5044

**From:** Joe Igelmund [mailto:jri@chavezgertler.com]
**Sent:** Monday, May 05, 2008 1:17 PM
**To:** Scharf, James (USACAN)
**Cc:** Tseng, Neill (USACAN); Kauffman, Chad (CIV); Jonathan Gertler
**Subject:** RE: Eap/Wyckoff -- Order of Examination Issue

The stipulation you signed provides in substance that if our meet and confer is not successful, you will file a letter brief this Friday, seeking an order enforcing your deposition notices of government employees.

Rule 11 provides in substance that, in making any filing, an attorney is certifying after reasonable inquiry that his or her contention is warranted by existing law.

We do not believe your position is supported by law. We have provided you our case authority, and ask that you provide yours in the telephone meet and confer later today -- exchanging supporting authority is obviously part of any good faith meet and confer.

We disagree with all of the other characterizations and representations in your email.
I will call you at 3:00.

Joseph R. Igelmund
Chavez & Gertler LLP
42 Miller Ave.
Mill Valley, Ca 94941
(415) 381-5599
joe@chavezgertler.com
www.chavezgertler.com

NOTICE: This email message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections. This message is solely for the use of its intended recipients. Any unauthorized use or disclosure of this message is strictly and expressly prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately.

# CHAVEZ & GERTLER LLP

## ATTORNEYS AT LAW

42 MILLER AVENUE
MILL VALLEY, CA 94941
TELEPHONE: (415) 381-5599
FACSIMILE: (415) 381-5572
joe@chavezgertler.com

May 5, 2008

**VIA EMAIL**

James A. Scharf, Esq.
Assistant United States Attorney
150 Almaden Blvd., Suite 900
San Jose, CA 95113

### Re: Wyckoff v. United States of America, et al

Dear Jim:

We reviewed your email, attached, preparatory to our telephone meet and confer today at 3:00 p.m.

Your email maintains the United States' position that it is entitled to notice and take the depositions of its own employees (Lt. Stiles, Cdr. Harman, Major Kundu, PO Sherman, the Travis PMKs, Chief McKinley, Master Chief Stage, PO DeLane, and PO Mendez) without regard to the right of plaintiffs to take these adverse depositions in the order plaintiffs determine.

The United States has provided no authority for its position, and we ask that you provide it during our telephone meet and confer today. As you have continued to press this matter under the threat of filing your own motion to enforce the deposition notices, we have been required to do our own research. Our research has disclosed no authority supporting the United States. In the cases we reviewed, the sole ground for permitting a party to take its own depositions is perpetuation of testimony, and you have provided no facts that require perpetuation of testimony. Moreover, the cases make clear that even in these instances, the taking by a party of its own deposition is "a fairly rare event, normally reserved for exceptional circumstances" in that it "undermines the presumption that a party has the right to schedule adverse depositions at a time it selects, whether for strategic purposes or otherwise." See Tierney v. Omnicom Group, Inc., (SD NY 2007) 2007 U.S.Dist.Lexis 6998, pp. 3, 7-8 (defendant's motion for protective order against self-noticing party granted). And, even where parties have been permitted to take their own depositions to perpetuate

James A. Scharf, Esq.
May 5, 2008
Page 2

testimony, the opposing party has been permitted to take their depositions <u>first</u>.  See
<u>19th Street Baptist Church v. St. Peters Episcopal Church</u>, (ED PA 2000) 190 F.R.D.
345, 350.

These meet and confers required by the United States' insistence on noticing
its own employees have taken a considerable time already.  Thus, if the United States
is not able to provide authority for its position in our meet and confer this afternoon,
we will ask you to confirm that the United States will withdraw the notices and permit
plaintiffs to notice and take the depositions in the order they determine is appropriate.

Very truly yours,

Joseph R. Igelmund

08.05.05.Scharf.jri.M&C.GovtWitns

## Scharf, James (USACAN)

**Subject:**                RE: Eap/Wyckoff -- Order of Examination Issue

Dear Joe:

Thank you for your letter.

In preparation for our meet and confer today, please consider the following points:

1.  It is your objection to our deposition notices. I would think the burden falls on you to provide authority that we can't begin the questioning of government employed witnesses who we noticed for depositions. I ask that you provide me any additional authority that you believe supports your position before our conversation today.

2.  The witnesses we seek to depose are not defendants themselves. It is not like the example you cited to me where counsel for Sperl might wish to depose Sperl in order to gain a strategic advantage during the deposition.

3.  The government needs to preserve this testimony for its dispositive motion and for trial. Please recall that we have already lost one deponent to deployment.

4.  In a telephone conversation with me regarding our Stipulation for a Revised Case Management Schedule, you verbally agreed to allow me to begin the questioning of these witnesses with a brief examination, if I agreed to postpone the depositions until after July 15. In a subsequent telephone conversation, you suggested that I could initiate questioning, provided I gave you written notice of the topics I intended to cover and answered any follow up questions you might have. Following up on that conversation, I sent you an e-mail proposal, based on your suggestions, to which you have failed to respond. Now, you are seemingly taking the position that under no circumstances may I initiate the questioning. With all due respect, you have not maintained a consistent position on this issue.

5.  You have stipulated that this issue will be tendered to the Court by letter brief due Friday, and your request that we now withdraw this request is inconsistent with the procedure you helped construct to resolve this outstanding issue.

For these reasons, and the reasons I outlined in my e-mail which accompanied the deposition notice, I believe we have the right to depose the witnesses we believe possess favorable information to the government that will support our liability contentions in this case. However, I am willing to discuss reasonable accommodations in the nature of which I have previously proposed in writing, which would allow me to initiate the questioning. If you are not willing explore such a compromise, I will need to comply with our stipulated procedure and file the letter brief on Friday.

James A. Scharf
Assistant United states Attorney
(408) 535-5044

**From:** Joe Igelmund [mailto:jri@chavezgertler.com]
**Sent:** Monday, May 05, 2008 11:29 AM
**To:** Scharf, James (USACAN)
**Cc:** Jonathan Gertler
**Subject:** RE: Eap/Wyckoff -- Order of Examination Issue

Jim -- Meet and confer letter attached, re our call this afternoon.  Thanks.

**Scharf, James (USACAN)**

| | |
|---|---|
| **From:** | Joe Igelmund [jri@chavezgertler.com] |
| **Sent:** | Monday, May 05, 2008 3:46 PM |
| **To:** | Scharf, James (USACAN) |
| **Cc:** | Jonathan Gertler |
| **Subject:** | Wyckoff/Eap v USA - Order of Examination and Bates issues |

Jim – Confirming the meet and confer a few minutes ago –

1/ On the Order of Examination issue, we are prepared to meet and confer with you further if you can provide authority supporting your position that defendant USA is entitled to notice the depositions of its employees who are adversary witnesses to plaintiffs, and whom plaintiffs want to depose. The only cases we have seen in which that has been permitted are perpetuation of testimony cases.

2/ On the Batesing issue, I understand that Chad is meeting with your ALS department to determine whether and when it will scan/Bates the 3000 pages produced by the USA without Bates numbers, and that you will be back to me "early this week" to let me know the answer. As I mentioned on the phone, not Batesing the documents has caused problems for all document request responses by all parties, as they cannot easily identify documents without Bates numbers. Thanks.

Joseph R. Igelmund
Chavez & Gertler LLP
42 Miller Ave.
Mill Valley, Ca  94941
(415) 381-5599
joe@chavezgertler.com
www.chavezgertler.com

NOTICE: This email message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections. This message is solely for the use of its intended recipients.  Any unauthorized use or disclosure of this message is strictly and expressly prohibited.  If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately.

## Scharf, James (USACAN)

| | |
|---|---|
| **From:** | Scharf, James (USACAN) |
| **Sent:** | Monday, May 05, 2008 3:42 PM |
| **To:** | Joe Igelmund |
| **Subject:** | Eap/Wyckoff:  Today's Meet and Confer re Order of Examination Issue |

Following up on our telephonic meet and confer re the order of examination issue, this confirms that I repeatedly asked you whether there were any circumstances under which you would agree to allow me to initiate the questioning of the witnesses we noticed for deposition.  You did not directly respond to this question, other than by repeating your request that I provide you with legal authority to support the government's asserted right to initiate the examinations.  Since it does not appear that you are willing to discuss any type of a compromise at this time, I will need to go forward with my letter motion on Friday pursuant to our stipulation.  Please feel free to contact me either before or after I file my letter motion, in the event you wish to explore a stipulation that would allow me to initiate the questioning, subject to other fair and reasonable terms and conditions, like those I suggested in my April 21 e-mail.

James A. Scharf

(408) 535-5044

**Scharf, James (USACAN)**

| | |
|---|---|
| **From:** | Scharf, James (USACAN) |
| **Sent:** | Monday, May 05, 2008 9:07 PM |
| **To:** | 'Joe Igelmund' |
| **Subject:** | RE: Wyckoff/Eap v USA - Order of Examination Issue |

You seem to get more reasonable after I file a motion. Please feel free to call me after you review my letter brief. I remain open to discussing any proposal that would allow me to initiate the examination. Today, you were not. And we both know that to be true.

Sent by Good Messaging (www.good.com)

  -----Original Message-----
From: Joe Igelmund [mailto:jri@chavezgertler.com]
Sent: Monday, May 05, 2008 10:44 PM Eastern Standard Time
To:    Scharf, James (USACAN)
Cc:    Jonathan Gertler
Subject:    Wyckoff/Eap v USA - Order of Examination Issue

Jim - Your characterization of plaintiffs' counsel as "not willing to discuss any type of a compromise at this time" does not reflect the facts.

You have understood for weeks that plaintiffs assert the right to take the depositions of the United States' employees and in the order plaintiffs choose. During that time, you and I have met and conferred on numerous occasions in an attempt to resolve the dispute arising from the United States noticing those depositions.

As part of the meet and confers, we have discussed your disclosing the discrete subject matters you intend to pursue at the depositions, so that I could determine whether there is any possible basis for an
agreement and plaintiffs not to assert their rights.

Yet, you still have not disclosed the intended subject matters. In fact, your May 2 email proposal offered only to disclose the "issues, topics, and subjects" at some undetermined time "prior to the depositions," and with no right of acceptance or approval by plaintiffs. After all of the discussions between us, you had to know there was no possible way we could consider or act on that proposal.

Thus, it is untrue that plaintiffs are "not willing to discuss any type of a compromise at this time," as you assert. Rather, plaintiffs are unable to discuss, or agree to, or know whether they can agree to, your noticed depositions until you disclose the subject matters you intend.
As you have not done so, we ask again for the legal authority that you contend supports the United States' deposition notices. If, on the other hand, you change your mind and are willing to disclose the subject matters so that plaintiffs can determine whether there is any basis for an agreement, we will review them promptly.


Joseph R. Igelmund

Chavez & Gertler LLP

1

42 Miller Ave.

Mill Valley, Ca  94941

(415) 381-5599

joe@chavezgertler.com <mailto:joe@chavezgertler.com>

www.chavezgertler.com <http://www.chavezgertler.com>


NOTICE:  This email message may contain confidential information or information protected by
attorney-client privilege, the doctrine of attorney work product or other applicable
privileges and protections.
This message is solely for the use of its intended recipients.  Any unauthorized use or
disclosure of this message is strictly and expressly prohibited.  If you are not the intended
recipient, please destroy all copies of this message, including your original copy, and
contact the sender immediately.

## Scharf, James (USACAN)

| | |
|---|---|
| **From:** | Scharf, James (USACAN) |
| **Sent:** | Tuesday, May 06, 2008 10:29 AM |
| **To:** | 'Joe Igelmund' |
| **Cc:** | Tseng, Neill (USACAN); Kauffman, Chad (CIV) |
| **Subject:** | RE: Wyckoff/Eap v USA - Order of Examination Issue |

Joe:

To answer your question: Of course I am. I verbally disclosed the intended subject matters
during our April 21 meet and confer and I was prepared to do it again yesterday. I would
even be willing to make you a written proffer as to what I expect each witness to say,
provided you do not unreasonably seek to limit my time or my specific questions, or try to
impeach with my proffer, which is not intended to be a prior statement of the witness.

This is precisely the type of compromise I wanted to explore yesterday. I specifically and
repeatedly asked you to suggest reasonable terms and conditions that would allow me to begin
the questioning. You specifically and repeatedly refused to do that yesterday, repeating
your request that I provide you with legal authority to support my asserted right to depose
government employed witnesses before you discussed the matter further. (From my perspective,
I feel that I have provided you with sufficient legal authority, by reading you that passage
from Wright Miller and quoting law from the very cases you cited.)

Are you now ready to discuss a way that would allow me to initiate the examination? If so,
let's set up a telephone conference call this morning. I have already spent considerable
time meeting and conferring with you and I need to draft my motion by the end of the day
because I will be out of the office at a settlement conference tomorrow. However, I am
willing to give it one more shot if you are.

As to your first sentence: It is not my intention to insult you and I don't think the Court
will find my position to be preposterous. But I must confess that I find you very difficult
to deal with on these issues. I do not think the Court will be happy that we couldn't even
agree on something as simple as who gets to ask the first question during a deposition and,
frankly, I am a little embarrassed that I have to proceed by motion on issues like this.
That is not my normal practice.

From my perspective, it seems like everything is a battle with you. It seems to me like you
are unwilling to capitulate on anything, until I file or threaten to file a motion. For
example, you were not willing to clear dates for the next round of depositions until I filed
my letter motion. If this does not reflect your true position or your true intentions, I
apologize, but this is how your conduct appears to me.

Finally, I would ask that you resist the temptation to respond in writing to this e-mail. I
think we have written more than needs to be said about this issue. Instead, please call me
this morning if you want to explore a compromise resolution in the manner I describe above.
Otherwise, I will consider that we have satisfied our meet and confer requirement and will
proceed to file the letter brief pursuant to our Stipulation.

Jim

-----Original Message-----
From: Joe Igelmund [mailto:jri@chavezgertler.com]
Sent: Tuesday, May 06, 2008 10:06 AM
To: Scharf, James (USACAN)
Cc: Jonathan Gertler

1

Subject: RE: Wyckoff/Eap v USA - Order of Examination Issue

Jim - Your email is insulting and preposterous.
The time to meet and confer is before motions are filed, not after.
Are you willing to confer, and to disclose the intended subject matters of your depositions,
per our email below?  Thank you.

Joseph R. Igelmund
Chavez & Gertler LLP
42 Miller Ave.
Mill Valley,  Ca  94941
(415) 381-5599
joe@chavezgertler.com
www.chavezgertler.com


NOTICE:  This email message may contain confidential information or information protected by
attorney-client privilege, the doctrine of attorney work product or other applicable
privileges and protections.
This message is solely for the use of its intended recipients.  Any unauthorized use or
disclosure of this message is strictly and expressly prohibited.  If you are not the intended
recipient, please destroy all copies of this message, including your original copy, and
contact the sender immediately.

**Scharf, James (USACAN)**

Subject:                          RE: Wyckoff/Eap v USA - Order of Examination Issue

I will await your call.

-----Original Message-----
From: Joe Igelmund [mailto:jri@chavezgertler.com]
Sent: Tuesday, May 06, 2008 11:03 AM
To: Scharf, James (USACAN)
Cc: Jonathan Gertler
Subject: RE: Wyckoff/Eap v USA - Order of Examination Issue

Jim -- Please don't suggest that I not respond in writing when you send lengthy emails
purporting to show how you are right and I am wrong, or you are behaving rightly and I am
behaving wrongly.
Your email includes a number of misstatements of fact and misrepresentations, so suffice it
to say that I disagree with everything you said.
The one matter that does need to be addressed -- as it impacts our meet and confer today --
is your statement that you "verbally disclosed the intended subject matters (of your intended
depositions) during our April
21 meet and confer."  If you had done so, Jim, I would not still be asking you to do it.  You
have never purported to state all subject matters that you would cover.  Instead, you have
said over and over that you would write up a list of the subject matters, and you never have.
I will call you at 11:30 this morning for the meet and confer.


Joseph R. Igelmund
Chavez & Gertler LLP
42 Miller Ave.
Mill Valley, Ca  94941
(415) 381-5599
joe@chavezgertler.com
www.chavezgertler.com


NOTICE:  This email message may contain confidential information or information protected by
attorney-client privilege, the doctrine of attorney work product or other applicable
privileges and protections.
This message is solely for the use of its intended recipients.  Any unauthorized use or
disclosure of this message is strictly and expressly prohibited.  If you are not the intended
recipient, please destroy all copies of this message, including your original copy, and
contact the sender immediately.

## Scharf, James (USACAN)

| | |
|---|---|
| **From:** | Scharf, James (USACAN) |
| **Sent:** | Wednesday, May 07, 2008 9:47 AM |
| **To:** | 'Joe Igelmund' |
| **Cc:** | Kauffman, Chad (CIV); Tseng, Neill (USACAN) |
| **Subject:** | RE: Wyckoff/Eap v USA - List of USA Depo Issues |

Joe:

I am at somewhat of a loss as to why you sent me another e-mail on this subject. We have already exchanged many e-mail messages and have spoken on the telephone three times. You have already told me that you will not discuss any type of compromise solution that would allow me to initiate the examination of any of the government-employed witnesses, unless I sent you legal authority to support my right to depose these witnesses.

As to your request for legal authority, I have already told you that Rule 30 is not limited to parties to the action but extends to "any person." Rule 30 does not prohibit a government or corporation from deposing its own employees, nor does it confer on the opposing party a legal right to depose those witnesses first. This is not a case of "self-deposition," such as where a plaintiff's lawyer wants to depose the named plaintiffs to preserve their testimony, which is the fact pattern of the cases you cite. Since there is no dispute that these witnesses should be deposed, and no dispute as to when the depositions will occur, the burden rests with you to provide legal authority for your asserted right to depose these witnesses first. If you have any additional legal authority which directly supports your position, I would be happy to review it.

At your request, I provided you with a description of the deponents' expected testimony, and offered to confine my brief examination to these subjects. Yet, after receiving this proffer, you still have not presented any type of proposal to resolve this dispute. You assert in your e-mail that "the subject matters are either the same as or interwined with plaintiffs' subject matters." However, you have never provided me with a list of the subjects you intend the inquire about during these examinations. By this e-mail, I ask you to immediately send me such a list. Discovery is a two-way street. You have learned why we wish to depose these witnesses. Are you willing to reciprocate? I suspect not. This, I submit, is just another example of how you want to "take" but are not willing to "give" during the discovery phase of this case.

If you have something new to add to this meet and confer process, by all means, send me another e-mail. I encourage you to propose a reasonable compromise that strikes a reasonable balance between our competing interests, or to provide me with legal authority which directly supports your asserted right to examine a party's employees first. Otherwise, I trust this concludes our meet and confer efforts and I will proceed to file a timely motion as contemplated by the Stipulation.

Jim

**From:** Joe Igelmund [mailto:jri@chavezgertler.com]
**Sent:** Tuesday, May 06, 2008 7:38 PM
**To:** Scharf, James (USACAN)
**Cc:** Jonathan Gertler
**Subject:** RE: Wyckoff/Eap v USA - List of USA Depo Issues

Jim – This will confirm our further telephone meet and confer today, after receipt of your email below. Plaintiffs contend that they have the right to notice and conduct the examination of the ten United States employees whose depositions the United States has noticed. In the meet and confer today, plaintiffs declined to waive those rights. Plaintiffs believe that these United States employees are adversary, with knowledge of subject matters relevant to plaintiffs' case and on which plaintiffs seek

to examine. In reviewing the list of subject matters on which the United States seeks to examine, it is clear that the subject matters are either the same as or intertwined with plaintiffs' subject matters. As the subject matters could not be separated, plaintiffs did not agree to waive their rights to notice and conduct the examinations. While we understand that you disagree with plaintiffs' position and are now going to file a motion seeking to enforce the United States notices, please let us know if you have any further authority to support your position. If you do, we will review it and respond promptly. Thank you.

Joseph R. Igelmund
Chavez & Gertler LLP
42 Miller Ave.
Mill Valley, Ca  94941
(415) 381-5599
joe@chavezgertler.com
www.chavezgertler.com

NOTICE: This email message may contain confidential information or information protected by attorney-client privilege, the doctrine of attorney work product or other applicable privileges and protections. This message is solely for the use of its intended recipients. Any unauthorized use or disclosure of this message is strictly and expressly prohibited. If you are not the intended recipient, please destroy all copies of this message, including your original copy, and contact the sender immediately.